[No. 6034.]

## THE FLORENCE AND CRIPPLE CREEK RAILROAD COMPANY v. JENSEN.

1. **Pleadings—Reply—Time of Filing**—A reply filed after the commencement of the trial, but to which no objection was made in the court below, will, upon appeal, be treated as filed in due time.—(31)

2. ——**Reply—Waiver of**—Where defendant proceeds to trial and presents evidence in support of his answer, he thereby treats it as controverted, and waives the reply.—(32)

3. **Appeal — Objections Not Presented Below** to a pleading filed out of time, will be disregarded on appeal.—(31)

4. **Bailment — Liability of Bailee** — A common carrier does not excuse himself from the performance of his contract of carriage by delivery of the goods to another claimant unless such claimant is the true owner; and the carrier has the burden of showing this.—(32)

5. **Common Carrier—Bill of Lading—Delivery by a Stranger Not Endorsed**—The carrier who delivers the freight to a stranger upon mere surrender of the bill of lading, unindorsed, such delivery being without the consent of either consignor or consignee, is liable to the consignor. It is immaterial that the carrier acted in good faith and was imposed upon.—(33, 34)

6. **Evidence—Bill of Lading — Presumption** — The presentation of a bill of lading by a third person, not endorsed by the consignee, does not overcome the presumption that the consignee is the owner of the goods.—(34)

*Appeal from Teller District Court*—Hon. LOUIS W. CUNNINGHAM, Judge.

Messrs. SCHUYLER & SCHUYLER, and Messrs. GUNNELL & CHINN, for appellant.

Messrs. HUFF & FERGUSON, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Jensen, the appellee, instituted this suit against appellant, The Florence and Cripple Creek Railroad Company, to recover damages for the value of certain ore alleged to have been delivered by the plaintiff to the defendant, and by the latter wrongfully converted to its own use.

The defendant is a corporation, engaged in carrying freight, for hire, between certain points in this state.

Plaintiff delivered to the defendant a carload of valuable ore, which the latter was to transport and deliver to a certain smelter at Pueblo known as the Eiler's plant. The defendant, upon receipt of the ore, delivered to plaintiff a bill of lading, in which plaintiff was designated as the shipper and the Eiler's plant as the consignee of the ore. The bill of lading expressly recited that the ore was received "to be transported over The Florence and Cripple Creek Railroad and associate companies, and de-

livered to consignee at destination (if such destination is located on said company's line), or to the next connecting carrier (if the destination of such ore is beyond said company's line), for such connecting carrier to deliver the said ore to consignee at the destination."

About two days after plaintiff delivered the ore to the defendant, and received the bill of lading, he was, for some reason, not disclosed by the record, arrested and thrown into the county jail at Cripple Creek, and, while so incarcerated, his pockets were searched by a deputy sheriff, and the bill of lading taken from him.

Immediately thereafter the defendant received through the mail a letter or order from an organization known as The Cripple Creek Mine Owners' and Operators' Association, to divert the car of ore in question, and deliver it to The Eagle Ore Company at Victor. This letter was accompanied by the bill of lading, the same, however, not being assigned. How the bill of lading came into the possession of the Mine Owners' Association is not disclosed. The defendant failed and refused to transmit the ore to Pueblo, or deliver it to any of its associate or connecting lines for that purpose, but without the knowledge or consent of the plaintiff complied with the request of the Mine Owners' Association, changed the destination of the ore, and delivered it to The Eagle Ore Company at Victor, and it was thereby wholly lost to plaintiff.

Defendant contends, that plaintiff was never at any time the owner, or the agent of the owner, of the ore or any part thereof; that plaintiff's possession was at all times wrongful and unlawful; that The Cripple Creek Mine Owners' and Operators' Association, having notified the defendant that it represented the owner of the ore, and had the right to

control the same, and having presented the bill of lading, and ordered the destination of the ore changed from the Eiler's plant at Pueblo to The Eagle Ore Company at Victor, and the defendant having complied with such order, was thereby relieved from its obligation to plaintiff to deliver the ore to the Eiler's plant.

Neither the answer, nor the evidence disclose the particular owner or owners of the ore for whom The Cripple Creek Mine Owners' and Operators' Assocition claimed to be the agent. On the contrary, the only persons appearing, from the evidence, to have any right or ownership whatsoever in the ore, were the plaintiff and consignee named in the bill of lading.

The cause, by agreement, was tried to the court without the intervention of a jury, resulting in a finding and judgment for plaintiff, from which defendant prosecutes this appeal.

The taking of evidence was commenced on April 13th. The replication appears to have been filed on April 14th, and defendant insists that the replication, not having been filed by order of court, cannot be considered, and that the allegations of the answer were, therefore, admitted and are conclusive. It is argued that under the allegations of the answer, the bill of lading had been properly transferred by delivery, and that defendant transported the ore in question according to the order of the holder of the bill of lading, and, therefore, discharged its full duty as a common carrier.

There is no merit in defendant's contention. No objection, no ruling of the court, or exception to the filing of the replication, appears in the record. The matter does not appear to have been presented to, or passed upon by, the trial court in any way whatsoever. Moreover, no motion was made to strike the

replication from the files, and, under the circumstances of this case, we will assume that the replication was properly filed.   We will not reverse a judgment upon a point which the trial court was given no opportunity to pass upon, and where the objection, had it been called to the court's attention, might have been obviated.—*Cone v. Montgomery,* 25 Colo. 277, 280; *Harrison v. Carlson,* 45 Colo. 55, 60.

Besides, it clearly appears that the allegations in the answer are, in effect, only a denial of the allegations of the complaint.   But were it otherwise, the defendant, by going to trial, and introducing evidence in support of its answer, treated the defense as though it had been controverted, and thereby rendered it unnecessary to file a replication.—*Schecter v. White,* 41 Colo. 219, 221.

Before the defendant could relieve itself of its obligation to plaintiff, it must have complied with its contract, or have been excused therefrom in some way recognized by law.   Having delivered the property, not to the consignee, but to another claiming to represent the true owner, it devolved upon defendant to show who such owner was, and the authority of the assumed agent to act in the premises.—*Jensen v. Eagle Ore Co.,* 47 Colo. 311, 107 Pac. 259.

The defendant contends, however, that, as a matter of law, this obligation was discharged when it delivered the ore upon the order of the holder, and received the bill of lading; that it was not in fault in delivering the ore to The Eagle Ore Company for the reason that the possession of the bill of lading by the Mine Owners' Association was, in effect, an assignment of the ore to that organization, and invested it with the right to demand and receive the ore.   We are referred to three authorities which are claimed to support this view.   An examination of them, however, shows that the doctrine announced

is, that a delivery of the shipper's "receipt without assignment, but with intent that the title to the goods for which it was given or an interest therein should be thereby transferred, would be effectual to accomplish the transfer intended." In *Weyand v. The Atchison, Topeka & Santa Fe Railway Company,* 39 N. W. (Iowa) 899, 902, it is said: "The cases * * * and the general conclusions of the court which made them, we think go no further than to hold that the delivery of an unindorsed bill of lading would be a good symbolical delivery of the goods it represented, where such was the intent and purpose of the parties."

It is true the bill of lading is a symbol of ownership of the goods described therein. In a sense it stands in the place of the goods. However, if the goods described in the bill of lading "be lost or stolen no sale of them by the finder or thief, though to a *bona fide* purchaser for value, will divest the ownership of the person who lost them or from whom they were stolen. Why then should the sale of the symbol or mere representation of the goods have such an effect?"—*Shaw v. Railroad Company,* 101 U. S. 557, 565.

It is, perhaps, safe to say that if the person in whose favor a bill of lading is written, delivers it un-indorsed, it constitutes a good symbolical delivery of the goods it represents only when such was the intent and purpose of the parties. In the case at bar there was no delivery of the bill of lading by the party in whose favor it was written—the Eiler's plant—nor was there a delivery by the party who caused it to be written, the plaintiff herein. Nor was there an intent on the part of anyone having any interest whatsoever in the bill of lading, to change the relation of the parties to the property in question. The fact that the Mine Owners' Association presented the bill

(3)

of lading to the defendant was not sufficient to overcome the presumption which the terms of the bill of lading raised, that the consignee, the Eiler's plant, was the owner of the goods. Such presumption is well established.—*Cary et al. v. Williams et al.*, 47 Colo. 259, 107 Pac. 219; *Congar v. The Galena & Chicago U. R. R. Co.*, 17 Wis. 492.

The contract with the defendant required it to deliver the goods to the Eiler's plant. The unindorsed bill of lading presented by the Mine Owners' Association, was evidence that the contract was still in force, and that Jensen's rights to have the property delivered in accordance with the contract were unimpaired. The delivery to The Eagle Ore Company was in no wise authorized and was made by defendant at its own risk.

It is immaterial that the delivery was secured through mistake or fraud, or the defendant, acting in good faith, was imposed upon.—6 Cyc. 472. However, as a matter of fact, it appears that defendant knew, or had reason to know, when it diverted the goods to The Eagle Ore Company, that it was doing so without the consent of plaintiff or the consignee.

It is clearly evident that the judgment is right, and it is, therefore, affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.