No. 12,526.

CALVAT ET AL. *v.* FRANKLIN ET AL.
(9 P. [2d] 1061)

Decided March 28, 1932.

Mr. HENRY RUGGERI, Mr. JOHN L. NOONAN, Mr. W. F. NOONAN, for plaintiffs in error.

Mr. C. W. DARROW, Mr. C. H. DARROW, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE object of this action by the plaintiffs, F. C. Franklin and Arthur Jones, against the defendants, C. C. Calvat and Hommerez Dusserre, is to recover both actual or compensatory, and exemplary, damages for their alleged unlawful entry upon, and use for pasturage of, certain lands in Garfield county of which the plaintiffs had the right of possession under a lease from one Slusser, the owner in fee except as against the United States, and which were filed upon and acquired by Slusser as placer mining claims embracing about 2,251 acres of land. Slusser had received his final certificate of entry and purchase thereof from the United States Land Office. Patent therefor had not been issued, the reason for withholding it being that at the time Slusser made proof of his compliance with the statute the Division Inspector of the United States Land Department had entered a protest against its validity. No action by the Land Department seems to have been taken upon this protest and the final certificate of entry and purchase was, and is now, in full force and effect.

The complaint alleges that the defendants wilfully, wantonly and recklessly and without any right or authority went upon the surface of these lands on or about May 20, 1928, and commenced pasturing thereon about 1,200 sheep, and were continuing so to pasture them; that there were three water holes upon these lands, two of which the defendants were using and exhausting, all to

the irreparable damage of the plaintiffs. The complaint further alleges that the defendants had announced their intention to continue such alleged acts of trespass and had already exhausted about one-half of the value of the lands for grazing purposes. The plaintiffs had been saving these lands as pasturage for their own sheep, which is of but little or no value without the water holes. The complaint further alleges that though the lands are not enclosed by a fence, the boundaries thereof are fixed and marked upon the ground as the result of the general system of public land surveys of the United States in connection with which visible monuments had been set upon the ground designating the description of the land and were maintained in position by the United States Government. When plaintiffs learned that defendants were thus pasturing their sheep upon these lands, they warned them of their unlawful trespass and exhibited to them the lease under which plaintiffs claimed. Plaintiffs also pointed out to the defendants certain of the government corners which the latter refused to inspect but they continued to keep their sheep on the premises. Slusser's final certificate was filed for record in Garfield county in the year 1927, and he had paid to the United States the purchase price of the claims amounting to about $5,600. Plaintiffs prayed for actual damages in the amount of $1,500 and exemplary damages in the sum of $1,000. In connection with this allegation plaintiffs state they had no other pasturage for their own sheep.

The defendants' special and general demurrers to the complaint were overruled and thereupon they filed their answer to the complaint, putting in issue its affirmative allegations, and replications were filed by plaintiffs denying the affirmative allegations of the answer. Trial by the court was had upon issues thus joined, a jury having been expressly waived by the parties. Evidence was taken and the court made findings of fact upon all substantial issues in favor of the plaintiffs and entered judgment against both defendants assessing actual or com-

pensatory damages at $500, and exemplary damages at $300 against defendant Calvat only. Defendants are here with this writ of error asking for a reversal.

In their briefs counsel for defendants state that the evidence is conflicting and that it will afford this court but small comfort to have it outlined. Our examination of the record discloses that in some respects the evidence is more or less conflicting, but there is abundant competent evidence to sustain the trial court's findings of fact. When defendants entered upon these lands they were aware that they were not the owners thereof, and that they had not obtained from any ostensible or apparent owner the right of possession. Soon thereafter plaintiffs' ownership was made known to them, but they continued to pasture their sheep thereon and refused to vacate until compelled to do so by the order of the district court.

We cannot disturb the findings of fact as to the unlawful entrance upon, and unjustifiable withholding possession by, the defendants. Indeed, the briefs of the plaintiffs in error, as already stated, make no serious argument that they ever had any right whatever to utilize this pasturage. The award of $500 for compensatory damages was clearly justified beyond question. Trial was to the court without a jury by express consent and acquiescence of both parties. We are justified in assuming that the trial court in estimating the amount of the damages observed the rules of law applicable thereto, for there is nothing in the record to show that the court otherwise proceeded. This applies both to the award of compensatory and exemplary damages. Indeed, we regard it as wholly unnecessary further to comment upon the findings of fact by the judge, sitting as a trier of facts. Furthermore, even if some incompetent testimony bearing upon the issues of fact was introduced by the plaintiffs, there is abundant competent testimony to justify the findings. Indeed, as we read the briefs of the plaintiffs in error, their chief reliance is upon wholly untenable propositions of law which they advance as suf-

ficient to impeach the integrity of the court's findings of fact and judgment thereon.

The defendants seek to justify their trespass upon these lands upon the ground that since Slusser, who filed upon the lands as placer claims, had only a final certificate of entry and purchase, patent not having been issued because of a protest against their validity by the Division Inspector, the plaintiffs, as lessees of Slusser, had no title or interest in the lands, because the placer claims were not located according to law by locators who were qualified; that no discovery was made upon any one or more of them; that the annual assessment work had not been done, and all of such claims were forfeited to the Government and had been so forfeited prior to the institution of this action and prior to the issuance of final certificate. The court struck out such defenses upon the tenable ground that the issuance of the final certificate of purchase entitled Slusser, who filed upon these claims, to the possession thereof, not only as against these defendants but against the world, unless and until the United States itself by appropriate proceedings cancelled the certificate of purchase and thus destroyed the rights of these plaintiffs as lessees of the locator. We doubt very much whether the defendants' learned counsel have any faith in their contention. It has been decided by this court in *Justice Mining Co. v. Lee*, 21 Colo. 260, 40 Pac. 444, and by the Supreme Court of the United States in *United States v. Iron Silver Mining Co.*, 128 U. S. 673, 9 Sup. Ct. 195, that a collateral attack, such as is made by the defendants in this case upon the title and right of possession of Slusser and these plaintiffs as his lessees, cannot succeed. In the Silver Mining case Mr. Justice Field said that the judgment of the Land Department upon such matters is that of a special tribunal and is unassailable, except in direct proceedings by the United States for its annulment or limitation. In the Justice Mining Company case we held that while proceedings for acquisition of title to a portion of the

mineral land of the United States are pending in the land office, that department has exclusive jurisdiction of the matter, and any attempt on the part of the courts to control its action would be an unwarranted assumption of jurisdiction. Counsel for the defendants in error say that it is the common practice of the Department to note "protest" upon a final certificate in order to give its agents time within which to make an investigation to ascertain whether there are grounds upon which to file charges. This, however, does not permit a mere stranger or trespasser, as the defendants are, to question the right of Slusser, or the right of these plaintiffs, as his lessees, to the possession of the premises in dispute.

██ Indeed, we think the only contention that has even any semblance of merit which the defendants make on this review, is as to the award by the court of $300 as exemplary damages which the plaintiffs have sustained as the result of the unlawful acts of the defendants in trespassing upon, and making use of, these premises. Our General Assembly in 1889 passed an act which is now section 6307, C. L. 1921, on exemplary damages which reads: "That in all civil actions in which damages shall be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, such jury may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages." Counsel for defendants say that this section is "jurisdictional," and that being so, jurisdiction cannot be conferred upon the court, sitting as a trier of facts, to award exemplary damages even by consent of the parties. In *Cohen v. Fox*, 26 Colo. App. 55, 141 Pac. 504, our Court of Appeals, at page 57, in commenting upon this section, said that malice "may be found by the jury or the court from the reckless and wanton acts of the injuring party." This would indicate that in the view of our

Court of Appeals, either a jury or a court, sitting as a trier of facts, may award exemplary damages. It may be said that this observation by the court was not necessary to the decision of the case. However that may be, we are of the opinion that this section is not jurisdictional in the sense contended for by the defendants. It does not say that an action to recover exemplary damages must in all cases be tried by a jury. It merely provides that in such actions a jury, if one is impaneled, may, in addition to actual damages, also award exemplary damages. There is no language in the section that compels a construction that only a jury may try the issue as to exemplary damages. This issue of exemplary damages is to be determined only in connection with the issue of actual damages. That a court, when sitting as a trier of facts, is competent to make an award of actual damages is conceded. If it may award actual damages and if, as the section provides, an award of exemplary damages may be made in addition to an award for actual damages, a court also has the power, when the parties themselves waive a jury and ask the court to try such issues, to award exemplary damages. The phrase "shall be awarded by a jury" evidently was employed because usually such damage cases are tried by a jury. Furthermore, the defendants expressly waived a jury and voluntarily consented to a trial by the court. No objection was made or exception taken thereto. They may not, in any event, be heard now with their objection. In *Leahy v. Dunlap,* 6 Colo. 552, at page 554, we said that in civil proceedings a party may waive a right which exists solely for his benefit whether the right is given either by statute or by the Constitution. In 24 Cyc. 149, the author says that the constitutional right to a jury trial in civil cases is a mere privilege intended solely for the benefit of the parties litigant and may be waived by them; and the same rule applies where the right to a jury trial is conferred by statute, even where the statute is in terms mandatory. At page 171, it is said: "The waiver of a

jury trial in effect substitutes the court in place of a jury and submits *all* questions of fact to the determination of the presiding judge. The waiver makes it immaterial whether the cause of action was legal or equitable or what kind of relief may be awarded on the trial." See also: *Cone v. Montgomery*, 25 Colo. 277, 53 Pac. 1052; *Florence Co. v. Jensen*, 48 Colo. 28, 108 Pac. 974; *Martin v. Payne*, 50 Colo. 171, 114 Pac. 486.

The judgment therefore should be, and it is, affirmed.

Mr. Justice Moore not participating.

Mr. Justice Hilliard dissents.

Mr. Justice Hilliard, dissenting:

I dissent from so much of the opinion of the court as affirms the award of exemplary damages. The only basis for the awarding of such damages in this jurisdiction is found in the provisions of section 6307, C. L. 1921, enacted in 1889. That section, of which I have italicized certain words, reads: "That in all civil actions in which damages shall be *assessed by a jury* for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, *such jury* may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages."

Before the enactment of that statute there was, we held in *French v. Deane*, 19 Colo. 504, 507, 36 Pac. 609, "no principle * * * better settled in this state than that punitive or exemplary damages could not be allowed in any civil case." The principle was based upon the opinion, expressed by the court in *Greeley Ry. Co. v. Yeager*, 11 Colo. 345, 350, 18 Pac. 211, that "the rule of compensation is sufficient to give the injured party all that he is entitled to." However veiled in obscurity the origin and growth of the doctrine of exemplary damages may be, it

seems it may be safely said that it is in derogation of the common law and should be so construed. "We cannot believe that it was ever a principle of the ancient and genuine common law, that damages should be punishment, or that the civil remedy for a wrong done should be punitive to the wrongdoer as well as compensative to the sufferer." 3 Parsons on Contracts (6th Ed.) 171.

The record here discloses only that the cause "came on regularly for hearing before the court, a jury being waived." From this the court has argued that the defendants waived the right to have exemplary damages, if awarded, assessed by a jury, and conferred that right upon the trial judge. *Leahy v. Dunlap,* 6 Colo. 552, is relied upon to sustain this view, but I think it holds directly to the contrary. There, at page 554, the court said: "It is scarcely necessary for us to even announce what we have understood to be a doctrine so well settled and familiar to the profession, that in civil proceedings a party may waive a right which exists solely for his own benefit." Exactly so. Here in the absence of the statute, the plaintiffs could not have recovered exemplary damages. If they are to have them should it not be held that the statute which gives them should be, if not strictly construed, construed at least in the obvious light of its own language? The statute provides that "in all actions in which damages shall be assessed by a jury * * * such jury may * * * award * * * exemplary damages." Is it not more reasonable to say that the plaintiffs waived their right to have exemplary damages when they waived a jury trial than to say the defendants waived the right to have such damages assessed by a jury by going to trial before the judge alone?

The court has said that "There is no language in the section that compels a construction that only a jury may try the issue as to exemplary damages," but it seems to me that no construction otherwise can be gathered from it. It is true that the section does not provide that an action to recover exemplary damages must in all cases be

tried by a jury, but the answer is found in the opinion of the court itself where it is said that the section "merely provides that in such actions a jury, if one is impaneled, may, in addition to actual damages, also award exemplary damages." It does not follow from that that any but a jury may award such damages; in fact it would appear that any but a jury is necessarily precluded.

It is my opinion, having in mind the seemingly plain language of the statute, and the background of the decisions handed down before its enactment, that the judgment should, so far as exemplary damages are concerned, be reversed.