## No. 13,346.

BLANC *v.* PEOPLE EX REL. WILCOXSON.

(28 P. [2d] 801)

Decided November 13, 1933.   Rehearing denied January 8, 1934.

Messrs. Noonan & Noonan, Messrs. Moynihan, Hughes & Knous, for plaintiff in error.

Mr. Frank Delaney, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

A prosecution for contempt. On a finding of guilty respondent was fined $300 and committed pending payment. Error is assigned.

It appears that in a proceeding in the same court, (see *Barrow v. Wilcoxson*, 91 Colo. 278, 14 P. [2d] 1095), brought under the Public Domain Range Act, chapter 125, Session Laws 1929, in which relator, a cattleman, and others were plaintiffs, and respondent, a sheepman, and others were defendants, there was adjudication to the effect that certain of the public domain was cattle range and certain other of said domain was sheep range, and where the parties were mutually enjoined from grazing their herds and flocks contrary to the apportionment of the range as made there. That there might be adjudication as indicated was decided in *Allen v. Bailey*, 91 Colo. 260, 14. P. (2d) 1087.

It further appears that on relator's motion for warrant of attachment in contempt, supported by his affidavit, charging that respondent was grazing his sheep on certain lands adjudicated as cattle range, said to be in violation of the injunctive writ, the court issued its order to respondent to show cause why he should not be punished for contempt of court.

Respondent's answer, while setting forth other defenses, not noticed in this review, alleged that as to the land mentioned in the order to show cause, and subse-

quent to the adjudicated apportionment of the range, he and two others, qualified, had filed in the United States Land Office at Denver, applications therefor under the Stock-Raising Homestead Act; that they had established residence on their several claims, paid required filing fees and commissions, for which they held receipts from proper land office officials, and had filed petitions in due form for designation of said lands, all in accordance with the said act. Replying, relator admitted that respondent and the two others mentioned in his answer had made filings for designation of the homesteads claimed by them, but denied that respondent was a qualified entryman, and denied that the lands sought to be taken by him and the others was of the character contemplated by the Stock-Raising Homestead Act. It was further replied that the entrymen were not acting in good faith, and that what they had done in the premises was mere subterfuge and pretext, purposed to enable them to make use of their so-called homestead lands, previously decreed to be cattle range, as range for sheep.

The evidence showed that subsequent to the apportionment adjudication, but prior to the time of the alleged violation of the writ therein, respondent and the other two claimants filed applications, each for lands particularly described in his application, and together comprising the lands involved in this investigation; that all had constructed houses on the lands respectively claimed by them and respondent and one of the other claimants had their families there at the time of the claimed contempt; that their several petitions for designation, as well as formal protests which the relator filed against the designations, were forwarded by the local United States Land Office to the General Land Office and Geological Survey at Washington, where, so far as appeared at the time of the trial, the petitions and protests remained undetermined. It was shown that respondent's sheep were pastured on the lands claimed to have been entered as home-

steads, all previously adjudged to be cattle range, as we have seen, but not until after the inception of whatever rights the stock-raising homestead entries afforded.

The respondent challenged the power of the court to determine in this contempt proceeding the controlling issue involved, namely, the right of respondent and the other homestead entrymen to the possession and use of the lands pending determination of the legality of their entries by governmental authorities, and to the court's adverse resolution and judgment he renews the contention on review. It was also insisted, and is urged here, that since section 4 of the act of 1929 made it a misdemeanor to violate the apportionment decree, and fixed the penalty, one charged therewith would be entitled to an orderly and constitutional trial, and could not be subjected to the procedure adopted in this matter; besides, as argued, if contempt may be maintained, then one charged with such violation can be made to suffer a double penalty for a single offense, said to be inhibited.

As to the right to maintain contempt in any event we notice that the point is more happily presented in another writ, not yet at issue, and determination is withheld.

On the question of the jurisdiction of the court to determine in this proceeding the right of respondent and the other homestead claimants to the lands claimed by them, as entrymen, the act of 1929 is without application. As stated in the title, that act has to do with the "regulation and use of the public domain range," and provides for judicial allotment thereof. What may be public domain is not to be solved pursuant to any provision of the act. Nor does the act assume to authorize the courts to adjudge that unquestioned public domain at the time of the apportionment decree, shall, as to all, or any part, continue so. In upholding the constitutionality of the act, Mr. Chief Justice Adams, speaking for the court, was careful to observe that the statute said nothing

about "title" to lands, and as carefully negatived the criticism that the words "preferred or better right," found in the act, conferred "grazing rights." *Allen v. Bailey, supra.* All that was purposed by the act, and only in that may it be sustained, was to provide for judicial determination of what particular portions of government lands should be grazed by herds and what by flocks. It is peace promoting legislation only. The act does not, as of course it could not, provide that public lands thus apportioned shall not be opened to settlement and segregation pursuant to acts of Congress, nor was the legislature so lacking in understanding as to say that cattlemen and sheepmen, whether parties to an apportionment proceeding, or not, should be disqualified above others. Indeed, counsel for relator concedes that "actual residence segregates land from the public domain," but, he says, residence claimed to have been established by Blanc was not in good faith. The trial judge said there was lack of bona fides.

Two questions necessarily arise. One as to the fact of Blanc's entry and residence, as shown by the evidence, and the other as to the power of the court, in the circumstances here, to hold him as in contempt for occupying the land pursuant to an act of Congress. By section 292, Title 43, Public Lands, U. S. C. A., provision is made for the entry attempted by Blanc, and by the establishment of actual residence thereon he was entitled to occupy the land pending designation by the land office officials. As we have seen, Blanc and the other claimants made filings in due form, paid all fee and commission exactions, and their papers had been forwarded to Washington. As to the residence claimed by them, witnesses for the relator who went to the land to make investigation testified they found respondent's house there, occupied by his wife and children, and a like situation as to one of the other claimants. The third had a house on his claim, but at the time of the investigation his family

was not there. In addition to lack of bone fide intentions on the part of Blanc, as the court determined to his undoing, it is claimed that by reason of his ownership of other land he was not eligible to make the entry mentioned. But all the questions presented, as we deduce, eligibility and good faith of respondent included, are pending in the land office where jurisdiction to determine is undoubted. In *Justice Mining Co. v. Lee,* 21 Colo. 260, 40 Pac. 444, presenting questions not different in principle, and in which it was claimed that the mining claim involved had been filed on by an alien, disqualified, we held that inasmuch as the matter was pending in the land office, the department had exclusive jurisdiction and any attempt by the courts to control its action would be an unwarranted assumption of jurisdiction. This case was followed and approved in *Calvat v. Franklin,* 90 Colo. 444, 9 P. (2d) 1061. See, also, *Anderson v. Woodward,* 66 Colo. 135, 180 Pac. 296; *United States v. Iron Silver Mining Co.,* 128 U. S. 673, 9 Sup. Ct. 195.

■■ At the time of the inception of the contempt proceeding, respondent and the other entrymen had apparently so far followed the prescribed procedure as to segregate the lands claimed by them from the public domain. Whether the lands so claimed should be designated in accordance with their petitions, or what they had done or should thereafter do met or would meet the law and regulations rested in the land office. *Whitney v. Taylor,* 158 U. S. 85, 15 Sup. Ct. 796. Lands originally public, cease to be public after they have been entered at the land office, and that such entry may not be confirmed by the land office on account of an illegal defect therein, or may be cancelled or declared forfeited on account of noncompliance with the law, or fail for whatever reason, are incidents inherent in all entries of public lands. *Witherspoon v. Duncan,* 4 Wall. 210. Assuming that at the time of the apportionment decree the lands involved were of the public domain, and that pursuant to the decree relator

was entitled to graze cattle thereon and respondent was precluded from like privilege for sheep, still, the record considered, the right of the one and the withholding thereof from the other in virtue of the decree, stood abated or, at least, postponed to the time of rejection of respondent's entry, by the land office. In the 1929 statute the legislature did not assume to say what was public domain, nor was it in the purview of the act, as we conceive, that in case of controversy to which only a claimant and occupant of public lands and the government, title holder, as here, could be parties, that state courts could make determination. Besides, in the nature of the issue, the judgment of the court in such a matter could not effect solution. The government would give it no heed, and the entrymen, prevailing in the land office, would have title notwithstanding adverse judgment of the court. The occupational or possessory right of these entrymen pending decision in the land office, even though finally their entries were held for cancellation, would not be subject to regulation by judicial tribunals. *Witherspoon v. Duncan, supra; Justice Mining Co. v. Lee, supra.*

It does not conform to essential justice to hold respondent, one of the entrymen, in contempt and visit such penalties that the possession which he is entitled to enjoy until the government enters denial, is made intolerable. The relator himself has recognized that the issue rests with the land office, for he has entered formal protest against the entry and submitted it to that authority. By the additional order which he seeks from the courts he would so harass respondent with court awarded burdens that he could not enjoy the right granted by Congress to occupy the land. In making provision for a claimant to a stock-raising homestead to occupy the land pending designation, and the claimant so electing, as here, the Congress was not indulging a mere gesture. The expression "to occupy" employed in the congressional act, means "to take possession; to hold posses-

sion; to become an occupant or tenant; to reside." Webster. "To hold in possession; to hold or keep for use." "In legal acceptation, actual use, possession." Bouvier's Law Dictionary (Rawle's Third Revision). And it is equally idle, as we conceive, to think the General Assembly meant to interfere with the possession of public lands exercised pursuant to an Act of Congress.

We are not unmindful of Circular No. 523, G. L. O., promulgating rules for administering the Stock-Raising Homestead Act. This pronouncement was first made in 1916, when, pending designation, the law prohibited occupancy of the land, the circular specifically reciting that the applicant may not occupy the land. Par. 12 (g). But in 1924, Congress amended the act, making provision for occupancy. In harmony with the amendment sub-paragraph (g) was omitted from circular 523. 51 L. D. 1, 11. By authority of the amendment and revised regulations respondent went into possession of the land. *In Re John F. Silver*, 52 L. D. 499, cited as authority to the effect that an application of the nature here has no segregative effect, the decision of Assistant Secretary Finney was of a situation where the applicant had not taken possession and made no claim under the 1924 amendment. Besides, not as here, the controversy was between the applicant and the government. The Secretary's ruling was favorable to the government, and his observations were solely to that end. If further proof of the inapplicability of that authority were required, it is to be found in the Secretary's citation, 47 L. D. 629, 630. It justified the Secretary in saying that the applicant there had not brought about segregation, but the reason assigned in his cited authority was the want of the right to occupy the land. At page 630, Assistant Secretary Vogelsang said: "That Congress did not intend to recognize any segregative effect to a stock-raising application for undesignated land is shown by * * * the prohibition * * * of the occupation of the land pending designation thereof."

■ Segregation means separation from others or the general mass or main body. Webster. When by the amendment of 1924 Congress extended the added right to claimants under the Stock-Raising Homestead Act, to occupy the land while the matter of designation was under consideration by the land office, and the right were availed of, as here, there resulted that which so partook of segregation as to separate the land in question from the general public domain. The dignity of the possession was further emphasized in the provision that, "if the petition for designation be denied, the settler may change his application to one under the enlarged homestead act or to one under the ordinary provisions of the homestead law." Circular No. 952, G. L. O., 50 L. D. 580. It would not be consistent to hold that possession in the circumstances of the record did not operate to alter the status of the land claimed by respondent.

We conclude that since the genesis of respondent's possession was an act of Congress, the legislative act of 1929 may not be construed to authorize its disturbance. Let the order be that the judgment is reversed, with instruction to the trial court to discharge respondent.

Mr. Justice Bouck dissents.