No. 15,436.

CARLSON ET AL. *v.* McNEILL, ADMINISTRATOR.
(162 P. [2d] 226)

Decided September 17, 1945.

Mr. CLARENCE W. BUTTON, Mr. E. V. HOLLAND, for plantiffs in error.

Mr. LeRoy J. WILLIAMS, Mr. WILLIAM W. McNEILL, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

IN a trial to the court John McNeill, as plaintiff, obtained a judgment against M. E. Carlson, Carlson Construction Company and Grover Turner, defendants, for damages for conversion of property and trespass, in the sum of fifteen thousand dollars. The latter, as plaintiffs in error, are here seeking a reversal of the judgment. While the cause was pending here on review Mr. McNeill died, and, upon stipulation, we entered an order whereby William W. McNeill, as administrator of his estate, was substituted as defendant in error; for convenience, however, we will herein refer to the parties as they appeared in the trial court.

Plaintiff's suit was based upon two causes of action. The first for conversion of property, described in the complaint as consisting of rails, dump cars and other personal property. On this cause $5,000 actual damages and $2,500 exemplary damages were sought and awarded. The second cause of action was based upon trespass on real property, of which the plaintiff owned an undivided approximately one-half interest. On this cause also $5,000 actual and $2,500 exemplary damages were alleged and adjudged.

The evidence showed that plantiff had been the owner of the above mentioned fractional part of the real es-

tate for some thirty years, and had also been the owner of various items of mining property for varying lengths of time during the period, all of said property being located in or near the Bobtail tunnel in Black Hawk, Colorado; that in April, 1938, the city of Black Hawk advertised for sale for unpaid taxes assessed by the city a considerable portion of the property involved in this suit, as a result of which it was sold to the city May 9, 1938. September 5, 1942, the city undertook to convey to defendant, Carlson Construction Company, by quit-claim deed, some of the property which it had previously acquired through the preceding tax sale. Thereupon, defendant Turner, and some other employees of the defendant construction company, during a period from September 1942 to the end of that year, entered upon the real estate and engaged in removing and hauling away by truck the personal property and fixtures attached to the realty. Entrance was obtained to the tunnel, which had been padlocked by plaintiff, by means of a key obtained by defendants which would unlock the padlock. This was done without plaintiff's knowledge. As soon as he learned what was happening, he ordered defendants off the premises and demanded that they desist from their operations. They persisted, however, disregarding oral notices and two written notices, one dated October 8, 1942 and the other dated November 4, 1942. Defendants excluded plaintiff from the tunnel by placing thereon a new lock.

In addition to asking for both compensatory and exemplary damages, plaintiff also asked for a body execution. The latter was denied.

Nineteen points are specified upon which reliance is made for reversal of the judgment. Counsel for defendants, in their brief, condense these into eleven points.

Points 2, 3 and 4 involve the question of title. It is contended that the court should have found that the defendants entered upon the property with right and title, and that the trial court was in error in find-

ing that plaintiff was the owner of the property in question. Sections 3, 4 and 5, among others, of the charter and ordinances of the city of Black Hawk, relating to tax sales, were introduced in evidence. It appears that the provisions of these sections were not followed in the tax sale culminating in the deed upon which defendant relies. The abstract of the record does not contain the published notice containing the description of the property to be sold, but an examination of the record discloses that the description in the deed to the city of Black Hawk is at variance with the description as published. The property named in the advertisement of the sale embraces shaft houses and machinery, without describing the location, and also other fixtures and articles of personal property bearing no relation to real estate. The deed from the city in turn conveys to defendants some property that was neither mentioned in the published notice nor in the deed to the city of Black Hawk. We are accordingly of the opinion that the trial judge was correct in finding that defendants had failed to prove title to the property in question. Plaintiff established title through a sheriff's deed of thirty years standing.

█ Point 10 also pertains to title, and we do not believe the court erred in not permitting defendants to show that the interest of plaintiff was only the amount or equity he had above tax liens against the property which were held by defendant, the Carlson Construction Company. Nor do we believe, in respect to point 9, that the court was in error in denying defendants the right, at the close of the second day of trial, for a further opportunity to present evidence as to values of property taken; at that time a continuance was granted to a week thence, at which time defendants were allowed to present further evidence in the premises. Defendants had full notification from the written notices served on them by plaintiff that they would be held liable for all property removed or damaged, and these notices were alleged in the complaint.

■ The sixth point deals with the fact that plaintiff, although owning all of the personal property involved in the case, had slightly more than a fifty per cent interest in the real property damaged, and in the fixtures that were removed from it, and that the court should not have allowed a judgment running to the plaintiff for damages which covered the complete interest in the property damaged. This objection, raised neither in the pleading nor at the trial, is answered by our holding in *Field v. Tanner,* 32 Colo. 278, at pp. 289, 290, 75 Pac. 916, where we said: "The rule in this jurisdiction is that in an action to recover real property, one tenant in common may recover possession of the entire tract as against all persons except his cotenants. *Weese v. Barker,* 7 Colo. 178." The right to sue for damages, as well as for possession, by a tenant in common would seem to be proper. 38 Cyc. 1134, note 77.

■ Points 1, 5, 6, 7, 8 and 11 deal with the question of damages. It is urged that the court assessed damages for inconsistent causes of action, namely: trespass and conversion. We see no inconsistency. The evidence supported the allegations of the complaint, which stated that defendants had removed from plaintiff's premises and converted to their own use numerous items of personal property; also that defendants entered upon the close of plaintiff and either removed or damaged various fixtures attached to the real estate. They blew up a Corliss steam engine and a hoist, damaged a compressor and, as a result of the explosions, the buildings housing that machinery were damaged.

■ It is contended that the damages awarded were excessive. If this contention refers to the compensatory damages, we are of the opinion that the evidence supports the allegations of the complaint and the judgment of the court as to both counts. Plaintiff testified that the value to him of the property converted or destroyed was $37,920, and the testimony of other witnesses in regard to values amply supports the court's findings.

Without referring to the numerous items of other property, it may be noted that one witness testified that the value of the 2,800 feet of track in the tunnel, plus the cost of laying it was $4,800, and that the cost of mere labor of installing the airline was $3,960.

We do not believe that the judgment for exemplary damages can be considered excessive. In *Starkey v. Dameron,* 92 Colo. 420, 21 P. (2d) 1112, we held that ordinarily exemplary damages "should bear some relation to the compensatory damages awarded, and the evil intent or wantonness exhibited toward the particular person injured." There, plaintiff sued for exemplary damages in the proportion of two-fifths of the compensatory damages, but the jury awarded exemplary damages in an amount twenty times the compensatory of $100.00 awarded, and we held that under the circumstances the exemplary should not exceed the actual damages.

Points 7 and 8 deal with the appropriateness of exemplary damages, counsel for defendants claiming, (a) that there being neither fraud nor malice involved in the case, exemplary damages should not have been awarded on either cause of action, and (b) especially under the circumstances of this particular case in view of the fact that the court, in a preliminary finding, stated that: "Their actions, as shown by the evidence, convince the Court that these people thought they bought something and that they had a right to get it regardless of consequences, but without any particular ill feeling or bias or malice toward plaintiff." Counsel also quote the following words of the trial court: "The court does not believe the testimony in this case shows any hatred or that the defendants had any particular grudge or ill-feeling against the plaintiff or rejoiced in what they were doing." Both the foregoing quotations are taken from that part of a memorandum as to findings and judgment which preceded the actual findings and judgment. They related to the award of a body

execution against defendants under section 74, chapter 93, volume 3, '35 C.S.A., which provides that execution against the body may issue when the action is founded in tort and where the defendant is "guilty of either malice, fraud, wilful deceit or negligence consisting of a reckless or wilful disregard of the rights or safety of others." See, also, Rule 101 (a), R.C.P. Colo.

The trial court awarded exemplary damages in accordance with section 6, chapter 50, volume 2, '35 C.S.A. reading as follows: "In all civil actions in which damages shall be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, such jury may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages. [L. '89, p. 64, § 1; R.S. '08, § 2067; C. L. §6307.]" See, also, Rule 101 (d), R.C.P. Colo. Although this section refers to damages to be assessed by a jury, we have held in *Calvat v. Franklin*, 90 Colo. 444, 9 P. (2d) 1061, that where an action for damages is tried to the court without a jury by consent of the parties, the court may, in a proper case, award exemplary damages under this section.

It will be noted that the paragraph providing for exemplary damages is a part of a different statute and has a different wording from the section of the law dealing with body executions, and that the circumstances under which exemplary damages may be awarded are expressed in the alternative. It was held in *Coryell v. Lawson*, 25 Colo. App. 432, at 437, 139 Pac. 25, 33 A.L.R. 652: "That part of the verdict assessing exemplary damages could be upheld if malice, fraud or insult, were entirely wanting. It would be sufficient if the jury believed that the injury inflicted on defendant [plaintiff] was attended by circumstances showing a wanton and reckless disregard of his rights and feel-

ings." We likewise have held that malice is not an essential element in a finding of exemplary damages. *Clark v. Small,* 80 Colo. 227, at page 229, 250 Pac. 385. The trial court made a further distinction in its memorandum as to findings and judgment, dated July 28, 1943, when it quoted from *Cohen v. Fox,* 26 Colo. App. 55, at page 57, 141 Pac. 504, as follows:

"The word malice, as used in our statutes, in the two separate instances, involved herein, is susceptible of two different constructions as to its meaning and use:

"First, the word malice, as used in the statute, ch. 68, R. S. 1908, section 3024 (the body judgment statute), is used in its *odious* and *malevolent* sense.

"Second, malice, as used in the statute concerning exemplary damages, section 2067, R. S. 1908, may be found by the jury or the court from the *reckless and wanton acts* of the injuring party, such as disclose an utter disregard of consequences, aside from any intentional malice in its odious or malevolent sense."

The trial court, in its above mentioned memorandum, went on to say that the action of the defendants "does show, using the language above quoted from the case of *Cohen v. Fox,* [supra], 'an utter disregard of consequences'," and in its final judgment in respect to both counts made a finding "that the injury complained of * * * was attended by circumstances showing a wanton and reckless disregard of the plaintiff's rights and feelings." We are of the opinion there was evidence to support this finding.

The "wanton or reckless disregard of the injured party's rights and feelings" may be judged, not only from the acts of the defendants, already described, but also from their words. In the instant case there was evidence showing that when plaintiff addressed one of the individual defendants as to how many of his men were in the Bobtail tunnel, defendant replied, "It is none of your damn business." This defendant's testi-

mony further showed, and was corroborated by the other individual defendant, that he was instructed to get the rails in the tunnel "regardless of what he had to do."

The case of *Smith v. Highland Mary M., M. & P. Co.,* 82 Colo. 288, 259 Pac. 1025, possibly presents more similarity to the instant one than any other Colorado case. There, as here, defendants destroyed a valuable property, relying upon a tax deed that was invalid; there, as here, compensatory damages were allowed based on the value of replacing the improvements and the value of the personalty; there complaint was based on conversion and later amended to trespass. We held, speaking through Mr. Justice Denison, that either cause would have been good in the circumstances. In the Smith case, as here, there was a claim for reimbursement for taxes paid, and it was held these can only be a claim in mitigation of damages. Such a claim must be affirmatively pleaded (Rule 8 [c], R.C.P. Colo.), not done in the present case, which has the additional factor of exemplary damages. We have already indicated our belief that the legislature may well have had in mind such circumstances as are here presented, when it enacted the clause providing for exemplary damages, and the trial judge, in awarding them, could well have been emphasizing the fact that this is a government of laws and not of men.

Judgment affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE ALTER does not participate.

MR. JUSTICE HILLIARD dissenting.

Since it would be profitless to discuss the point at length, I pause only to make brief record of my dissent to the court approval of the exemplary damages awarded below. Neither party to this controversy dereigns

title to the property involved through mesne conveyances—plaintiff claiming under a sheriff's deed, defendant pursuant to tax deed; or, otherwise stated, a new title originated with each party in turn, defendant's subsequent to plaintiff's. It is true, that while the trial court, proceeding in the light of evidence, found that plaintiff's title was of greater dignity than that of defendant, still, it stated that defendants "thought they bought something and that they had a right to get it * * *, but without any particular ill feeling or bias or malice toward plaintiff." Further, that "the court does not believe the testimony * * * shows any hatred or that the defendants had any particular grudge or ill feeling against the plaintiff or rejoiced in what they were doing." I am not unmindful that the foregoing findings were made in the disposition of plaintiff's demand for body execution, which was denied, but, nevertheless, I regard them as of moment in our review of the punitive award.

Premised on the finding that plaintiff had title, judgment in the sum of the actual damages logically followed, and, while it rarely happens, as my acquaintance with the profession generally leads me to think, that in damage cases counsel "pray" for less than the actual damages suffered, I note that here the finding in that regard, on each of the two causes of action, was for the exact sum sought, or $5,000.00. Likewise, exemplary damages awarded in each of the causes correspondingly followed counsel's preappraisement—$2,500.00. The combined awards reached the grand total of $15,000.00, $5,000.00 of which came through the exemplary route.

With all respect to this and the trial court, I am convinced that the general awards were generous, and, the premises considered, the added exemplary awards were not justified.