[No. 3706.]

## TRAVER v. DODD ET AL.

1. NOTICE—*Possession of Land.* The mere "charge" of land, not accompanied by actual occupancy, or any act of ownership, is not notice of any right in the one so in charge.

2. INJUNCTION—*To Restrain a Trespass Upon Lands*, allowed.

3. LANDLORD AND TENANT—*Right of Action for a Trespass to the Tenement.* Damages to growing crops belong to the tenant, and are not recoverable by the landlord.

4. DAMAGES—*Evidence as to.* An action for injury to lands by trampling the same with cattle, exterminating the alfalfa with which the land was seeded. A witness estimated the permanent damage at $10 per acre, because he could have gotten $10 per acre for it, if seeded down. There was no evidence of the rental value of the land, if unseeded, in the year of the trespass, nor that, unseeded, it had no value. The evidence was held insufficient to sustain an award of $10 per acre.

The evidence as to an award of damages, occasioned by the necessity to "re-seed" the land, *held* too indefinite to support the award made.

5. —— *Mitigation of Damages.* In an action for trespass to lands, and resulting injury to the growing crops, the defendant is entitled to show negligence of the tenant contributing to the injury.

*Appeal from Montrose District Court.* HON. SPRIGG SHACKLEFORD, Judge.

Mr. MILLARD FAIRLAMB, for appellant.

Messrs. CATLIN & BLAKE, for appellees.

CUNNINGHAM, Presiding Judge.

Appellees, plaintiffs below, were the owners of one hundred sixty acres of land which they had purchased in 1906 from one Finch. Finch had owned the land but a few months, having purchased it from one Davis. At no time were there any buildings or improvements of that character upon the land. Plaintiffs leased the land in March, 1909, to A. W. Dillon, who took possession of it and began preparing a portion of it for seeding to alfalfa. Appellant, defendant below, interfered with Dillon's possession of the land by turning his stock upon a forty-acre tract that was in alfalfa. Dillon attempted to keep defendant's stock off of the land by locking gates, but the latter tore down the fences, opened the gates, and successfully persisted in ranging his cattle upon the land. Thereupon, the owners of the land, appellees here, brought suit in the district court to enjoin defendant's use of the land, and for damages. The defendant, in his answer, admitted the facts hereinabove stated, but justified his conduct by claiming and alleging that he was a tenant from year to year of John W. Davis, the first owner named, at the time the said Davis sold the land to Finch; that at the time Finch, the second owner, purchased the property from Davis, he had a talk with Finch, resulting in the renewal, substantially, of the leasing arrangement which he, the defendant, had with the said Davis. That he, the defendant, had never received any notice from the present owners, appellees here, to quit the premises, and that he had continued to perform the obligations of his original lease with Davis and Finch. A temporary injunction was issued against the defendant, which, on the final trial, was made permanent, and dam-

ages were awarded plaintiffs against the defendant in the sum of $570. From this judgment defendant appeals.

1. We are clearly of opinion that the trial court committed no error in that portion of its decree enjoining and restraining the defendant from in any wise trespassing upon the lands of the plaintiffs. The testimony of the defendant himself showed clearly that he was without right as against the plaintiffs to possession of the land. The date and character of his lease from Davis, if he had one, nowhere appear in the record. On this point the defendant contented himself with simply stating:

"I have been in possession of this land about eight years, seven or eight years. * * * I first rented this place from the Davis brothers. It was owned by them. This land was in my possession under a lease from the Davis brothers when it was purchased by Larry Finch, about the first day of April, 1906."

His leasing arrangement with Finch was, according to the testimony of defendant, an oral one, consisting of a conversation between himself and Finch, which he says occurred about the time Finch purchased the land, and which he details as follows:

"Larry Finch drove up there and wanted me to show him the lines of his property, and we drove up on the hill and I showed him as near as I could where the line ran. * * * And he says: 'I want you to go on there and help me, and speak a good word if anybody comes here to look at it, and help me sell it, and stay right along.'"

The defendant was then asked by his counsel: "Q. What were you to do with the property?" and he answered:

"Well, I was to go right along the same as I had, clean out the ditches and take care of the alfalfa, furnish

the water, and do just as I have done. I was not to give him any rental, I was only to perform these services.''

Granting, but not deciding, that this conversation was sufficient to constitute a good and valid lease as between Finch and Traver, it could in no manner bind the plaintiffs here, who purchased the land in about ninety days after this conversation between Traver and Finch, and apparently without any notice whatever of defendant's rights, if any he had, or his claim of right to possession. Defendant testified that he had never had any talk with Dodd and Jansick, the plaintiffs in this case, who had been the owners of the premises for three years prior to the filing of the complaint in this cause, in regard to this property; in fact, he could not remember that he had ever seen either of them. Defendant was asked by his counsel:

''Were you in the occupation of these premises at the time the sale took place to Dodd and Jansick?''

and he answered:

''I had the place in charge right straight along up to the time this court ruled that I must get off.''

The nature, however, and character of his ''charge'' of the land does not appear to have been such as would give notice to Dodd and Jansick that he claimed the right to occupy the same.

2. An examination of the record convinces us that the trial court committed reversible error in the determination of the question of plaintiffs' damages. The court allowed the plaintiffs damages in the sum of $570. From its oral findings made at the close of the evidence, this sum appears to have been made up of damage done to the growing alfalfa upon forty acres of land, which the court fixed at $10 per acre; $80 for extra seed that the court found the plaintiffs were obliged, by reason of the

trampling of the land by defendant's stock, to purchase seed for re-seeding the alfalfa land; and the rental value of the land for three years, which included the year 1909, the year for which the plaintiffs had leased the land to the said Dillon. It is apparent that a portion of these damages, if rightfully assessed, would belong, not to the plaintiffs, but to Dillon, their tenant, to whom they had leased the land for the year 1909 at $50 per year, the said Dillon being required, in addition to the $50 per year, to do certain work upon the land as a consideration for its use. There is nothing in the record to indicate that Dillon had assigned his claim for damages to the plaintiffs. The $400 item allowed for damages to the land is supported by the testimony of Dillon alone, and his testimony on this point was brief, incomplete, and we think wholly insufficient to establish the item of $400 damages. Dillon was asked this question:

"Q. What, from your knowledge of the condition of the alfalfa field prior to the time it was tramped by defendant's stock, and after it was tramped by defendant's stock prior to August, 1911, what would you say was the permanent damage to the alfalfa, if any?"

"A. About $10 per acre."

This was all the testimony he gave on this point on direct examination. Immediately, upon cross-examination, Dillon was asked this question:

"What is your full meaning then in regard to the fact that you think it was damaged that much?"
and he answered:

"Because I could have gotten $10 an acre for the same ground this year, had they have gotten it seeded down last year. Q. Do you know what the ordinary rental of alfalfa land in the Uncompahgre Valley is in that locality? A. About $10 an acre."

This closes his testimony in so far as it pertains to

this item of damages for which the court allowed $400. Nowhere did the witness attempt to state what the rental value of the alfalfa land was for the year 1909, without the re-seeding, nor was there any attempt made on behalf of plaintiffs to prove that without re-seeding it had no value. It will thus be seen that the court allowed the plaintiffs, by way of damages for this particular item, what the full rental value of the land would have been had it been properly re-seeded, and there had been no trampling. Again: The item of $80 found by the trial court on account of extra seed which the plaintiffs were compelled to furnish by reason of the trampling of the land was not sufficiently established by the evidence. Witness Dillon, the tenant, who was the only witness called on this or any other point by the plaintiffs, testified as follows:

"Q. How much more seed did it take to re-seed it (meaning the land that was to be sown in alfalfa) than it did last year before it was tramped? A. They furnished me a little over double the amount of seed this year. I could not tell the exact amount, but it was something over 300 pounds, near 400 pounds, I think. It made a total of something over 600 pounds altogether. Alfalfa seed is worth 20c a pound on the market."

On cross-examination he was asked:

"Q. When you went on that place in 1909 was there much re-seeding needed on this alfalfa field? A. Yes, sir; there was some re-seeding required at that time. *We estimated it at 300 pounds,*" etc.

It is apparent that this testimony is too indefinite and uncertain to warrant the finding that the sowing of $80 worth of extra seed was made necessary by the tramping of the cattle of defendant.

On the trial appellant propounded many questions which we think were competent for the purpose of min-

imizing the damages which plaintiffs sought to recover against him, to every one of which the trial court sustained objections. For instance, the defendant attempted to show neglect on the part of the tenant, Dillon, in the matter of watering the alfalfa crop; that Dillon had a portion of the land planted to beets, and that the water with which he provided himself was utterly insufficient to cover the beet land and the alfalfa land. We think the trial court committed reversible error in sustaining the objections of the plaintiffs to this character of proof, and, for that reason, its judgment must be reversed and the case remanded for a new trial.

*Reversed and remanded.*