## No. 79SA143

**Billy Frick and Roger Frick v. Gary Abell, James Kevil, Danny Castillo, The 400 Club, and the City and County of Denver, a municipal corporation**

(602 P.2d 852)

Decided November 13, 1979.

510

Dymond and Littlepage, Lewis W. Dymond, Jr., James A. Littlepage, for plaintiffs-appellees.

Geer & Goodwin, P.C., Edward O. Geer, Robert E. Goodwin, for Gary Abell.

Wesley H. Doan, P.C., Wesley H. Doan, Michael P. Bahr, for City and County of Denver.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

Gary Abell (defendant) appeals the judgment of the Denver District Court awarding damages to Billy and Roger Frick (plaintiffs) in an action in tort for injuries allegedly received as a result of an assault and battery. Abell also appeals the ruling of the district court that the City and County of Denver (Denver) need not indemnify him for the exemplary damages which resulted from this incident. We affirm.

On April 19, 1973, officers Gary Abell and James Kevil[1] of the Denver Police Department arrived at the 400 Club, in the City and County of Denver, and arrested the plaintiffs. The Fricks and members of their family testified at trial that both police officers then assaulted and beat the men without provocation or apparent justification. There was testimony that the police officers held Billy Frick on the ground and repeatedly kicked him in the head, face, and body. There was also testimony that the officers handcuffed Roger Frick, threw him on the ground, and kicked him repeatedly. The assaults allegedly continued after the plaintiffs were taken to Denver General Hospital.

---

[1] Officer Kevil's appeal has been rendered moot through an agreement reached by the parties and thus is not before us.

Billy and Roger Frick commenced an action in tort against Abell, Kevil, and the 400 Club.[2] Trial was to a jury, which awarded Billy Frick $1,000 in actual damages and $4,500 in exemplary damages against Abell. The jury awarded Roger Frick $2,000 in actual damages and $3,000 in exemplary damages against Abell and Kevil.

Abell appeals, alleging three bases of error: first, that the evidence at trial did not support the award of exemplary damages; second, that the exemplary damages awarded were excessive; and third, that the city of Denver is required by its charter to indemnify him for any exemplary damages which are assessed against him arising out of his actions as a police officer.

I.

The first issue concerns the propriety of the award of exemplary damages in this case. Section 13-21-102, C.R.S. 1973, provides that exemplary damages may be assessed in a civil action if the injury is inflicted through fraud or with malice, insult, or a wanton and reckless disregard of the victim's rights and feelings. Those elements must be established beyond a reasonable doubt. Section 13-25-127(2), C.R.S. 1973.

The purpose for the award of exemplary damages is to punish the wrongdoer as an example to others. *Ark Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 263 P.2d 815 (1953). As such, conduct which is merely negligent cannot serve as the basis for exemplary damages. As this court stated in *Ress v. Rediess,* 130 Colo. 572, 579, 278 P.2d 183, 187 (1954):

"To justify a recovery of exemplary damages, the act causing the injuries must be done with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive."

The requirements for the award of exemplary damages are met if the defendant, while conscious of his conduct and cognizant of existing conditions, knew, or should have known, that the injury would probably result from his acts. *Foster v. Redding,* 97 Colo. 4, 45 P.2d 940 (1935); *Clark v. Small,* 80 Colo. 227, 250 P. 385 (1926).

Abell claims that there was not sufficient evidence to support the jury's implied finding of the facts needed to justify the award of exemplary damages. The standard to be applied is whether there was sufficient evidence, when viewed in its totality and in the light most supportive of the verdict, to support the jury's finding on this issue. *See People v. Bueno,* 188 Colo. 396, 534 P.2d 1196 (1975).

---

[2] Subsequently, Denver was made a party defendant, and Abell filed a cross claim against Denver alleging that, if the plaintiffs recovered a judgment against him, Denver should be liable for the payment of that judgment since he was acting in the course and scope of his employment as a police officer.

■ After reviewing the evidence, we hold that the jury, by believing the testimony of the plaintiffs' witnesses at trial, could find beyond a reasonable doubt that the defendant willfully and wantonly disregarded the rights of Billy and Roger Frick. The award of exemplary damages was proper.

## II.

■ The second issue raised by the defendant concerns the excessiveness of the exemplary damages. The purpose for punitive damages is to punish the wrongdoer and thus deter similar conduct in the future. *Ark Valley Alfalfa Mills, supra.* However, exemplary damages must bear some relation to the actual damages. *Id.* Although no precise formula can be utilized in this determination, *Carlson v. McNeill,* 114 Colo. 78, 162 P.2d 226 (1945), the reasonableness of the award can be ascertained by examining the facts of the case to discover if the jury was impermissibly motivated by prejudice or properly guided by the purposes for exemplary damages. *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo. App. 386, 486 P.2d 477 (1971), *rev'd. on other grounds,* 178 Colo. 361, 497 P.2d 997 (1972).

■ The factors which guide this determination, set forth by the court of appeals in *Leo Payne Pontiac, supra,* are expressly approved at this time. Those factors are: (1) the nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others.

■ As noted in *Leo Payne Pontiac, supra,* an appellate court is not in as advantageous a position as the trial court to weigh these factors and to ascertain the reasonableness of exemplary damages. Accordingly, the trial court's determination of this issue will not be disturbed absent a clear abuse of discretion. *Id.*

■ No such abuse of discretion can be found here. To beat two men so severely that they incur one and two thousand dollars, respectively, in actual damages is an abhorrent act. The gravity of such an assault is exacerbated when the perpetrator is an officer of the police department. The assessment of exemplary damages must be of sufficient magnitude to deter such conduct by police officers in the future. Awards of $3,000 and $4,500 are not unreasonable under those circumstances.

## III.

### A.

The third issue raised in this appeal is whether Denver has the duty to indemnify the defendant for the exemplary damages awarded against him. Two provisions of the Denver city charter and three state statutes are involved.

Section A9.4-2 of the Denver charter provides that Denver is liable for the tortious acts and omissions of municipal police officers acting within the scope of their duties "in the same manner and to the same

extent as a private employer under like circumstances" and that Denver is obligated to indemnify such officers for final judgments rendered against them in actions based on such tortious conduct in which Denver is a defendant or third-party defendant. Section C6.8-1 makes similar provisions for municipal "officers and employees." Through these charter provisions, Denver has obligated itself to indemnify municipal police officers for exemplary damages arising out of the officers' tortious conduct in those situations in which private employers would be required to indemnify their employees for such damages.

However, the "Colorado Governmental Immunity Act," section 24-10-101 *et seq.*, C.R.S. 1973, also contains provisions relevant to Denver's liability for damages awarded against its employees for acts within the scope of their employment. Section 24-10-110(1), C.R.S. 1973, provides that a public entity (including a city and county) shall be liable for the costs of defending such an employee and the payment of judgments for claims arising from such acts "except where such act or omission is willful or wanton." Section 24-10-114(4), C.R.S. 1973, provides that a public entity "shall not be liable for punitive or exemplary damages under this article." In addition, section 29-5-111, C.R.S. 1973 (now in 1977 Repl. Vol. 12), provides that:

"Notwithstanding the doctrines of sovereign immunity and respondeat superior, a . . . city and county . . . shall indemnify its paid peace officers for any liability incurred by them and for any judgment, *except a judgment for exemplary damages,* entered against them for torts committed within the scope of their employment . . . ." (Emphasis added.)

The defendant contends that indemnification of municipal police officers for exemplary damage awards arising out of their tortious conduct is a matter of purely local concern and that, since Denver is a homerule city, its charter provisions on the subject control over state statutes. Denver argues that the matter is one of purely statewide concern and that the state statutes therefore control over the local enactments. *Colo. Const.* Art. XX, Sec. 6; *Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971).

We do not agree with either party's characterization of the issue. In accordance with our recent decisions in *DeLong v. City and County of Denver,* 195 Colo. 27, 576 P.2d 537 (1978), we find the matter to be one of *both* local and statewide concern. In *DeLong,* we found "governmental immunity for tortious acts of municipal police officers" and, specifically, limitations on compensatory damages for personal injuries in actions against municipal governments, based on such tortous conduct, to be a matter of concurrent local and statewide concern. We noted the state's interest in uniform application of its policies concerning governmental tort immunity, as well as Denver's interest in "ensuring that adequate compensation is awarded to persons injured by the tortious acts of the municipality's police officers." 195 Colo. at 32, 576 P.2d at 540. We see

no distinction in this context between limitations on the amount of compensatory damages and limitations on the availability of exemplary damages, and therefore follow *DeLong*.

Since indemnification of municipal police officers for exemplary damage awards is a matter of concurrent local and statewide concern, the state statutes referred to above supersede the Denver charter only to the extent that the policies of the enactments are in conflict. *DeLong, supra*. We find no such conflict here. Sections 24-10-110(1), 24-10-114(4), and 29-5-111(1), C.R.S. 1973, concern the extent to which tort liability shall be *imposed* on local entities pursuant to the state's partial statutory abrogation of the doctrine of governmental immunity. The statutes do not address the extent to which such local entities may voluntarily expand that state-imposed liability. We find the reasoning of *DeLong* persuasive:

"[T]he People of Denver, by charter amendment, decided to further extend the salutary principles enunciated by the state legislature and to permit victims of torts of City police department members to receive greater compensation . . . . We cannot say that a municipality may not provide greater monetary compensation to victims of torts committed by the municipality's own police officers. This additional compensation certainly does not offend any pertinent state interest." 195 Colo. at 32, 576 P.2d at 540.

## B.

Since we find no conflict in policy between the state statutes and the charter provisions, the latter control in the case before us. *Colo. Const. Art. XX, Sec. 6.* It remains, however, to determine the effect of the charter provisions on Denver's liability to the defendant. Denver must indemnify the defendant for the exemplary damages awarded against him to the extent that a "private employer under like circumstances" would be required to indemnify his servant. Such indemnification would be required of a private employer under the doctrine of *respondeat superior* if he: (a) authorized or approved his servant's tortious act; (b) participated in the act; or (c) failed to exercise proper care in the selection of his servant. *Holland Furnace Company v. Robson*, 157 Colo. 347, 402 P.2d 628 (1965).

The defendant does not contend that Denver participated in his tortious conduct, or that Denver was negligent in selecting him as a member of its police force. Nor can he tenably argue in this case that, by employing him as a police officer, Denver prospectively authorized the sort of conduct found by the jury; *i.e.*, malicious conduct, or conduct undertaken in wanton and reckless disregard of the rights of the plaintiffs.

The defendant does contend that, by retaining him as a police officer *after* the occurrence of his tortious conduct, Denver ratified that conduct retrospectively and is therefore liable to indemnify him for the

exemplary damages awarded against him. He points out that his conduct was the subject of an internal investigation by the Denver Police Department, that the investigation resulted in a finding that he had not acted improperly, and that he was not dismissed from his employment as a police officer.

The fact that a master retains a servant, after gaining knowledge of the servant's malicious or wanton conduct, is evidence which can tend to prove ratification of the servant's acts. However, retention in employment, standing alone, is not conclusive of such ratification. *McChristian v. Popkin,* 75 Cal. App.2d 249, 171 P.2d 85 (1946); *Woodard v. City Stores Company,* 334 A.2d 189 (D.C.App. 1974); *Abraham v. S. E. Onorato Garages,* 50 Haw. 618, 446 P.2d 821 (1968); *W. Seavey, Ratification by Silence,* 103 U.Pa.L.R. 30, 35 (1954). In the circumstances of the case before us, we cannot say that Denver's retention of the defendant as a member of its police force in itself constitutes ratification of the tortious conduct on which the award of exemplary damages was based, especially in light of Denver's good faith belief in the propriety of the defendant's actions in arresting the plaintiffs. *Tauscher v. Doernbecher Manufacturing Company,* 153 Ore. 152, 56 P.2d 318 (1936).

The defendant has not made an adequate showing of retrospective ratification of his tortious conduct by Denver. Under *Holland Furnace, supra,* a private employer in Denver's position would not be liable to indemnify the defendant for the exemplary damages awarded against him. Therefore, under the specific terms of sections A9.4-2 and C6.8-1 of the Denver city charter, Denver is not liable to indemnify the defendant for those damages.

Judgment affirmed.