Paul MAILLOUX, Plaintiff-Appellee,

v.

Robert W. BRADLEY,
Defendant-Appellant,

and

Susan C. Bradley, Defendant.

No. 79CA0599.

Colorado Court of Appeals,
Div. III.

March 18, 1982.

James E. Heiser, Aurora, for plaintiff-appellee.

Wood, Herzog, Osborn & Bloom, P. C., Charles S. Bloom, Fort Collins, for defendant-appellant.

J. Conard Metcalf, Boulder, for amicus curiae Colo. Trial Lawyers Ass'n.

BERMAN, Judge.

Relative to a judgment on a claim for assault and battery, defendant Robert W. Bradley appeals on the sole issue of the amount of exemplary damages awarded plaintiff under § 13–21–102, C.R.S.1973. We affirm.

"[T]he reasonableness of the [exemplary] damages award[s] can be ascertained by examining the facts of the case to discover if the jury was impermissibly motivated by

prejudice or properly guided by the purposes for exemplary damages." *Frick v. Abell*, 198 Colo. 508, 602 P.2d 852 (1979).

The evidence and the inferences which may properly be deduced from such evidence viewed in a light most favorable to the plaintiff, *see People in Interest of A. G.*, 43 Colo.App. 514, 605 P.2d 487 (1979), reveal that plaintiff contracted to construct a residence for the defendant. Construction of the home began in late October or early November of 1976. Thereafter, a continual series of perceived threats directed against the plaintiff and disagreements between the parties occurred.

In one such incident, defendant introduced plaintiff to a man called "Butch" whom he had brought with him to the construction site. The defendant pointed to Butch and stated: "He is a pretty big one, ain't he?" The plaintiff agreed and defendant then stated: "Yes, Butch and I have a pretty good business going together. He works in the yard, the salvage yard. He runs errands, drives trucks out for me to Denver. He also takes care of people. And he can take care of you too." Plaintiff testified that Butch was approximately 6'3" to 6'4" and he perceived this conversation as an implicit threat to him. Because of these incidents and because he believed he was not being promptly paid the amounts due him for the construction, plaintiff left the project on May 5, 1977, and filed suit to foreclose a mechanic's lien in August of that year.

Four days subsequent to the filing of the complaint, the plaintiff testified that defendant came to a bar where plaintiff was sitting with friends and two times asked the plaintiff to go outside with him to talk. The plaintiff finally replied that he did not have anything to say to defendant unless it was in court. After plaintiff ignored defendant's third request to go outside, the defendant shouldered his way next to where plaintiff was sitting, grabbed him around the scruff of the neck, and stated, "I know you padded those hours. You owe me a thousand bucks. I am going to kill you." Defendant then struck plaintiff in the eye with his fist.

Plaintiff testified that he left the building and ran a full block away to another bar expecting that he would be shot in the back by the defendant. He described his emotional reaction as being one of "pure terror." The following day plaintiff called his attorney and asked if he thought it would be wise for him to purchase a gun and his attorney advised him otherwise.

After the incident at the bar plaintiff amended his complaint to include, *inter alia*, claims for assault and battery. A jury trial resolved the matters at issue in the suit and settlement was made on all claims except the entry of judgment against defendant for assault in the amount of $100 actual damages and $1,000 exemplary damages and damages for battery in the amount of $280 actual and $10,000 exemplary damages.

Defendant concedes, and we agree, that "exemplary damages are not subject to mathematical certainty, that punitive damages cannot be accurately measured, and that there is no definite, precise ratio governing the relationship of actual damages to exemplary damages"; however, he argues that the excessive nature of the award is demonstrated by the fact that the "ratio of damages in the assault claim between actual and exemplary is 10:1 and in the battery over 35:1."

In support of this contention defendant notes that in assault cases in Colorado reversals have occurred where the exemplary damage ratio was 4:1. *E.g., Kresse v. Bennett*, 151 Colo. 549, 379 P.2d 807 (1963). *See also Starkey v. Dameron*, 92 Colo. 420, 21 P.2d 1112 (1933) (where the ratio was 20:1).

Since the damage ratios here are at such variance with that 4:1 ratio, defendant would have us conclude that they represent a per se demonstration that the jury was imbued with passion and prejudice against him. We disagree that there is any such per se rule, or that the verdicts here show passion and prejudice against the defendant, or that the jury was improperly guided by the purposes for exemplary damages. *Frick v. Abell, supra.*

■ The factors which are significant in determining the propriety of an exemplary damages award are "(1) the nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others." *Frick v. Abell, supra.* Or, as expressed in *Leidholt v. District Court,* Colo., 619 P.2d 768 (1980): "[I]n determining the amount which should be awarded as punitive damages, the *severity of the defendant's wrong,* as well as the *extent of the defendant's assets,* must be considered to ensure that the award will *punish* the defendant." (emphasis added)

■ The punishment of the offender and its deterrent effect is the heart and soul of § 13–21–102, C.R.S.1973, authorizing exemplary damages. *See Mince v. Butters,* Colo., 616 P.2d 127 (1980); *see also Punitive Damages, The Doctrine of Just Enrichment,* 27 *Drake L.Rev.* 195 (1977–1978). Adoption of the first punitive damages statute, Colo. Sess.Laws 1889, p. 64, was the response of our General Assembly to *Murphy v. Hobbs,* 7 Colo. 541, 5 P. 119 (1884) which held that punitive or exemplary damages could not be awarded under the common law. The statute allowing exemplary damages appears to be the General Assembly's means of requiring a minimum degree of civility which is necessary for a civilized society to insure, in some small measure, that the recourse to more violent methods is not taken by its inhabitants who feel defrauded or, in a sense, destroyed by another.[1]

And, as we have previously held: "While exemplary damages must bear a reasonable relationship to compensatory damages . . . no fixed mathematical formula exists to determine reasonableness . . . . The relationship between exemplary and compensatory damages is but one test to be applied in assessing the excessiveness of the award. Of equal importance, the verdict must be sufficient to punish the defendant and effectively deter others in similar circumstances." *Miller v. Carnation Co.,* 39 Colo.

App. 1, 564 P.2d 127 (1977). The wealth of the defendant is a pertinent factor, for what may be punishment to one defendant by way of exemplary damages may not be sufficient punishment for another. *Starkey v. Dameron, supra,* (Butler, J., concurring).

■ Here, defendant does not assert that he is unable to pay the amount awarded or that the awards would pauperize him. Indeed, there was evidence that the defendant was engaged in his own business, was earning $10,000 a month, and that he owned a rental property in addition to the house being built for him which was the subject of the instant action.

From the evidence presented on behalf of the plaintiff the jury rationally could have found that the events at the bar were not simply an isolated incident, but rather were the culmination of a course of conduct deliberately designed to harass and intimidate the plaintiff, thus making the attack one which was deliberately premeditated. The jury could also have inferred that the timing of this attack, taking place as it did just four days after suit for foreclosure of the mechanic's lien had been instituted by the plaintiff, was designed to intimidate the plaintiff into foregoing his right to use the courts to redress what he perceived to be a wrong done to him. The jury could well have concluded that such conduct violated the highest interests of society and that a significant punishment was called for to deter others from the same conduct. *See Wegner v. Rodeo Cowboys Ass'n,* 290 F.Supp. 369 (1963); *see also Page v. Yool,* 28 Colo. 464, 65 P. 636 (1901).

We reject defendant's contention that the ratio of actual damages to exemplary damages should be no more than 2:1 for both the assault and battery claims. We believe the rule to be more flexible than that contended for by defendant. *See McNeill v. Allen,* 35 Colo.App. 317, 534 P.2d 813 (1975). *See also Schulz v. Dreiling,* 526 P.2d 1341 (Colo.App.1974) (not selected for official publication) (11:1 ratio affirmed).

---

1. "If people would gratify the passion of revenge outside of the law, if the law did not help them, the law has no choice but to satisfy the craving itself, and thus avoid the greater evil of private retribution." *O. W. Holmes, The Common Law, Lecture II, Criminal Law* (1881).

In *Kresse v. Bennett, supra,* the court noted that: " '[I]f punishment is not commensurate with the injury done the award will *generally* be held unreasonable.' " (emphasis added) The use of the word "generally" in the foregoing quote or the word "ordinarily" as used in *Starkey v. Dameron, supra,* is recognition that there is no per se rule and that, indeed, allowance has been made for cases where a variation of facts would warrant a jury in assessing exemplary damages beyond the limits that our courts have previously approved. Here, the jury could find from the evidence and inferences to be drawn from such evidence an exception to the general rule.

Furthermore, the jury here was instructed in accordance with *Colo.J.I.* 5:3 (2d ed. 1980) which instruction does not advise the jury as a matter of law that the exemplary damages must be reasonable in relation to the actual damages awarded. The instruction was given by the court in conformity with C.R.C.P. 51.1 which, in pertinent part, states that "in instructing the jury in a civil case, the court shall use such instructions as are contained in Colorado Jury Instructions (C.J.I.) as are applicable to the evidence and the prevailing law." However, the jury was advised that before awarding exemplary damages that if they found by evidence "beyond a reasonable doubt that the injury complained of was attended by fraud, malice, or insult, or a wanton and reckless disregard of the rights and feelings of the plaintiff, then in addition to any actual damages, [they] may also award the plaintiff a reasonable sum as exemplary damages." Further, they were instructed that "exemplary damages are not to be construed as compensation to the plaintiff for wrong done, but as punishment to the defendant and as an example to others."

The defendant did not object to or seek any clarification of the instruction as given, although he had the opportunity to do so. Accordingly, since defendant failed to request a clarifying instruction that the exemplary damages should be reasonable as compared to the actual damages awarded, he now is in no position to complain. *See*

*Caldwell v. Kats,* 193 Colo. 384, 567 P.2d 371 (1977). *See also Federal Insurance Co. v. Public Service Co.,* 194 Colo. 107, 570 P.2d 239 (1977). We leave defendant in the posture which he accepted and placed himself.

The trial court did not perceive the exemplary damages as being excessive and refused to grant a new trial on this ground. Since we recognize that "an appellate court is not in as advantageous a position as the trial court to weigh the factors involved and to ascertain the reasonableness of exemplary damages," *Frick v. Abell, supra,* we find no clear abuse of discretion on the part of the trial court in refusing to set aside the award of exemplary damages or order a remittitur, and thus, we will not disturb that determination. *Leo Payne Pontiac, Inc. v. Ratliff,* 178 Colo. 361, 497 P.2d 997 (1972).

Nor do we perceive exemplary damages in an amount equal in essence to only one months' earnings of defendant as being evidence of passion or prejudice, nor does it demonstrate that the jury refused to be properly guided by the purposes of exemplary damages.

Defendant's other contentions of error are without merit.

Judgment affirmed.

KELLY and KIRSHBAUM, JJ., concur.