MONTGOMERY WARD & CO., INC., an Illinois corporation, Plaintiff-Appellant and Cross-Appellee,

v.

Robert W. ANDREWS, Defendant-Appellee and Cross-Appellant.

Nos. 83CA0985, 83CA1108.

Colorado Court of Appeals,
Div. II.

Feb. 19, 1987.

Rehearings Denied March 19, 1987.

Jacobson & Morrell, Don D. Jacobson, Denver, for plaintiff-appellant and cross-appellee.

Hamil Professional Corp., J. Lawrence Hamil, Bruce L. Waterhouse, Jr., Denver, for defendant-appellee and cross-appellant.

VAN CISE, Judge.

In this action based on a contract and repossession dispute, plaintiff, Montgomery Ward and Company, Inc. (Wards), obtained a judgment against defendant, Robert W. Andrews, on its complaint for breach of contract. Andrews obtained judgments, including both compensatory and exemplary damages, against Wards on his counterclaims for trespass, conversion of unsecured goods, outrageous conduct, and tortious interference with a prospective contract. Wards appeals the judgments against it and the trial court's refusal to add attorney fees to its breach of contract judgment. Andrews cross-appeals, challenging the adequacy of the exemplary damages awarded for interference (one dollar) and the compensatory damages award-ed for conversion ($15,000). We affirm in part and reverse in part.

The admissions in the pleadings and the evidence at trial showed that in October 1976 Andrews contracted with Wards to operate a catalog sales agency in a building owned by him in Aspen. Andrews also entered into a financing agreement with Wards providing for it to have a security interest in some of his equipment and merchandise. Problems and disputes developed between Andrews and Wards, and, in March 1979, Andrews decided to sell the agency. His contract with Wards provided that a sale would be subject to Wards' approval.

Andrews discussed with his store manager's parents, the Weilands, the possibility of their buying the agency for $68,000. As part of the required approval process, the Weilands then met with Wards' district sales manager in May 1979. At this meeting, the sales manager told the Weilands that they could not afford to buy the agency, and, although the sales manager did not have actual knowledge of the agency's financial status, he told them that it was losing money.

In June, the Weilands had a second meeting in connection with obtaining Wards' approval, this time with Wards' agency sales manager. He told the Weilands that they could not afford the agency and that he thought the price was too high. He then told the Weilands to think about it a few days and call him back. Mrs. Weiland later called him, but found he had been replaced by another, who told her that she would have to begin the application and interview process anew. Discouraged, the Weilands decided not to purchase the agency.

Andrews had refused to pay his remittances to Wards, as a result of which Wards decided to close the store. Andrews was given one day's notice, after which a Wards controller went to the business premises on August 21, loaded everything, including Andrews' personal goods, into a truck, and took it all to Wards' dock in Denver. All locks at the place of business

were changed, and the key was delivered to Wards' attorney. Andrews was not able to obtain the key until 10 days later at a meeting with Wards' agents in Denver.

In September, Wards commenced this action, alleging that Andrews had breached the sales agency contract and that there was a balance due and owing under that contract. Andrews counterclaimed, seeking damages for alleged breach of contract, trespass, conversion, outrageous conduct, interference with a prospective sale of his business, fraud, and negligent misrepresentations. Andrews also sought exemplary damages on all but the breach of contract counterclaim.

At trial, the court dismissed the fraud and negligent misrepresentation counterclaims at the close of Andrews' presentation. It directed a verdict in favor of Andrews on his claims for trespass and for conversion of unsecured goods, leaving the issue of damages to be determined by the jury. The jury found for Wards on its breach of contract claim and awarded it $24,000. It also returned a verdict in favor of Wards on Andrews' counterclaims for breach of contract and for conversion of secured goods.

The jury found in favor of Andrews and against Wards on the other counterclaims submitted to it, and awarded him $1,428 plus $1,000 exemplary damages for the trespass, $15,002 plus $10,000 exemplary damages for the conversion of unsecured goods, $3 actual plus $1 exemplary damages for the outrageous conduct, and $68,000 plus $1 exemplary damages for interference with a prospective sale. On Wards' motion, the trial court reduced the interference award by $928. Judgments were then entered on the verdicts as modified. Wards' post-judgment motion to amend the judgment on its breach of contract claim to include its attorney fees was denied.

Neither party appeals the judgments relative to breach of contract. Andrews does not appeal the dismissal of his fraud or negligent misrepresentation counterclaims.

## I. *Jurisdiction*

Andrews contends here, as he did in a previous motion, that this court has no jurisdiction to hear this appeal because neither party filed a timely notice of appeal. This division denied the earlier motion, and we continue to reject this contention.

Judgments were entered in this case on February 1, 1983. Timely post-trial motions were argued on July 11, 1983, and, at the conclusion of that hearing, with both parties present, the trial court announced its rulings. On that date a minute order was prepared and was entered on the register of actions. Each party's notice of appeal was filed August 11. Under ordinary circumstances, the time for filing these notices would have commenced to run and would have been computed from July 11, with the result that, pursuant to C.A.R. 4(a) as then in effect, the time would have expired 30 days thereafter, August 10.

However, here, at the conclusion of the July 11 hearing, the trial court directed Andrews' attorney to prepare a written order. The attorney did so, setting forth the court's rulings on the various motions. The proposed order included the modification in the amount of one judgment and the reason therefor and the reasons for denial of the requested attorney fees, none of which was contained in the July 11 minute order or in the entry in the register of actions. This was approved as to form by Wards' attorney, was signed by the court August 5, and was entered on the register of actions as of that date.

Under these unique circumstances, we regard the August 5 order as the final order triggering the time requirements for appeal. Therefore, the time for filing the notices of appeal commenced running no earlier than August 5 (the actual date of entry on the register of actions may have been as late as August 31), and the August 11 filings were timely. *See Converse v. Zinke*, 635 P.2d 882 (Colo.1981).

## II. *Wards' Appeal*

### A. *Evidentiary Matters*

Wards contends that the trial court committed reversible error in three rulings on

evidence offered by Andrews in support of his counterclaims. We do not agree.

■ The first claimed error concerns testimony by Andrews about why he thought it necessary to have assurances in writing that he could sell the agency without interference by Wards. The court admitted the challenged testimony for the limited purpose of establishing Andrews' state of mind. Although the relevance and, to the extent it was hearsay, the admissibility of the proffered evidence is doubtful, the actual testimony was so vague that any error in its admission was harmless.

■ Second, Wards challenges the court's admission into evidence of a page from the 1981 annual report of Mobil Corporation from which had been excluded everything except one column which showed the earnings (a loss of $160,000,000) and the assets ($4,154,000,000) of Wards, an admitted wholly owned Mobil subsidiary. The name "Mobil Corporation" was on the top of the page. At the time of its admission, the court cautioned the jury that the exhibit could be considered only as related to the issue of exemplary damages, and then only if it found beyond a reasonable doubt that Andrews was entitled to such damages. Wards' counsel made it clear that Mobil was not on trial. Although it would have been better had the name "Mobil Corporation" been blocked out, under the circumstances here there was no reversible error in admitting the exhibit.

■ Lastly, Wards claims the trial court erred in allowing Andrews' attorney, on recross-examination of Wards' controller, to argue (in support of his outrageous conduct and exemplary damages claims) that Wards showed bad faith by bringing this lawsuit. That is a tortured interpretation of the interrogation. Moreover, there was no objection raised to this line of questioning and, consequently, no ruling was made. Hence, we perceive no error.

## B. *Trespass*

Wards argues that the trial court's directed verdict on Andrews' trespass counterclaim rejected or ignored Wards' contractual and statutory right to enter the business premises and repossess the secured property pursuant to the financing agreement. We disagree.

■ The trial court properly found, as a matter of law, that, even if it were assumed that Wards had a right to enter the premises, it had no right (a) to remain on the premises longer than necessary to repossess its goods, or (b) to exercise exclusive possession over the premises thereafter, preventing Andrews and his employees from entering. Restatement (Second) of Torts § 158(b) (1965). Here, Wards deliberately exceeded its rights by changing the locks and keeping the keys from Andrews and his employee for a period of at least ten days after it had repossessed the goods to which it claims it was contractually entitled. Hence, the entry of a directed verdict on the trespass claim was correct.

Wards does not question that part of the trial court's instruction calling for damages "measured by the fair market rental value of the business premises during the time that the trespass continued," or the $400 awarded pursuant thereto. *See Traver v. Dodd*, 24 Colo.App. 273, 133 P. 1117 (1913). However, it contends the court erred in allowing the jury, in addition, to award an amount for loss suffered (1) by the destruction of Andrews' business measured by its fair market value ($928) and (2) by the termination of the rental agreement for the truck ($100). We disagree.

■ The goal of the law concerning compensatory damages is reimbursement for actual loss suffered. *Zwick v. Simpson*, 193 Colo. 36, 572 P.2d 133 (1977). The jury found, under the court's instructions, that the destruction of the business and the termination of the truck rental agreement occurred as the natural and proximate consequences of Wards' trespass and that Andrews incurred losses as a result. Therefore, he was entitled to recover for those losses also. *See Slovek v. Board of County Commissioners*, 697 P.2d 781 (Colo.App. 1984), *aff'd*, 723 P.2d 1309 (Colo.1986).

Certain damages adjustments pertaining to this claim and Andrews' other claims are all addressed in section IV below.

### C. *Conversion of Unsecured Property*

At a meeting ten days after Wards took all of Andrews belongings, Wards' controller offered to let Andrews inspect his belongings in the truck and trailer parked at the dock in Denver, and Andrews declined. Wards then offset its estimate of the value of these goods against Andrews' indebtedness. It claims that these actions on its part preclude a claim of conversion because Andrews did not suffer a "loss in fact." We disagree.

This contention ignores the evidence that Wards merely offered Andrews the opportunity to inspect, not take away, his goods. Also, the valuation placed on the goods by Wards was challenged by Andrews.

■ Where there is a wrongful taking, the tort of conversion is complete upon that taking; the victim does not have to demand return of the goods nor does the wrongdoer have to refuse such a demand. *Colorado Kenworth Corp. v. Whitworth*, 144 Colo. 541, 357 P.2d 626 (1960). Nor does he have to consent to a sale to the wrongdoer on its terms. Only if Wards had *lawful* possession of the goods in the first place would its acquiescence or refusal to surrender the goods be relevant in showing conversion. *See* W. Prosser & W. Keeton, *Torts* § 15 (1984).

■ Such is not the case here. Wards wrongfully took items that belonged to Andrews, its agent knew the items were Andrews', and Wards kept the items in Denver at its dock. Construing the evidence in a light most favorable to Wards as the party against whom the motion for a directed verdict was granted, *Adams v. Leiholdt*, 38 Colo.App. 463, 563 P.2d 15 (1976), *aff'd* 579 P.2d 618, 195 Colo. 450 (1978), we find no error in the trial court's directing a verdict for Andrews.

### D. *Outrageous Conduct*

Wards contends that the trial court erred in submitting the issue of outrageous conduct to the jury. We disagree.

■ As stated in Restatement (Second) of Torts, § 46 (1965), adopted by our supreme court in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970): "One who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Outrageous conduct is conduct that is so extreme in degree as to go beyond the bounds of decency and be regarded as atrocious and intolerable in a civilized community. *Enright v. Groves*, 39 Colo.App. 39, 560 P.2d 851 (1977).

■ The jury determines the ultimate question whether conduct is outrageous, but the trial court decides whether the issue should be submitted to the jury in the first instance, *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292 (Colo.App. 1982), based on whether reasonable persons could differ on the conduct being outrageous. *Meiter v. Cavanaugh*, 40 Colo. App. 454, 580 P.2d 399 (1978); *DeCicco v. Trinidad Area Health Ass'n*, 40 Colo.App. 63, 573 P.2d 559 (1977). This decision by the trial court is reviewable on appeal. *Zalnis, supra.*

■ While Andrews was out of town, Wards cleared everything, including Andrews' personal belongings, out of the store in which Andrews had operated for three years. Wards then changed all the locks and turned the key over to its attorney. When Andrews returned to Aspen, he found an empty, inaccessible store where his business had once been. Reasonable persons could differ on the question of whether this conduct was outrageous; thus, submission of the issue to the jury was not error. *See Vogel v. Carolina International, Inc.*, 711 P.2d 708 (Colo.App. 1985).

■ Wards argues, however, that it was merely acting in accordance with its rights under the contract and finance agreement, and under the Colorado Uniform Commercial Code, which allows repossession. We reject this argument, because "It is not the fact of seizure which gives rise to the claim for outrageous conduct, but the manner in which the seizure was

effected." *Vogel, supra; see CJI–Civ.* 2d 23:5 (1980). We also reject the argument as a misstatement of fact; Wards took unsecured goods and Andrews' belongings along with secured goods.

Wards next argues that Andrews did not present any evidence that he suffered severe emotional distress. We disagree. Andrews testified that he was "in shock" when he discovered the locked and empty store. This supports the jury's award.

Wards also contends that this claim was based on the same conduct which formed the basis of Andrews' other claims and so was merely an alternative theory of recovery, rendering the jury's verdict invalid. We do not agree that the verdict was invalid.

█ Alternative claims for the same injury are allowed under C.R.C.P. 8(e)(2). It is thus no longer necessary for a party to elect which of several claims for relief he intends to pursue. *Weick v. Rickenbaugh Cadillac Co.,* 134 Colo. 283, 303 P.2d 685 (1956). Parties can state as many separate claims as they wish, regardless of their consistency. It is the evidence at trial that determines what relief will be granted. *Apex Investments, Inc. v. Peoples Bank,* 163 Colo. 325, 430 P.2d 613 (1967).

█ What Wards is trying to present here is the issue of whether the jury's verdicts were inconsistent. They would have been if there were other verdicts based upon identical evidence for the same injury. *See Rusch v. Lincoln-Devore Testing Laboratory, Inc.,* 698 P.2d 832 (Colo. App.1984). However, although the same evidence was used to prove the trespass and conversion claims as was used to prove outrageous conduct, the injury, at least to the extent of the emotional distress, was different. The trespass and conversion claims were for injury to property and not for emotional distress. We thus find no inconsistency in the jury's verdict.

### E. *Interference*

#### 1. *Sufficiency of Evidence*

Wards contends that there was insufficient evidence for the jury to find that Wards had tortiously interfered with Andrews' prospective sale of the business to the Weilands. We disagree.

█ To establish liability for interference with a prospective contract, a claimant must show intentional and improper interference that prevented formation of a contract. *Dolton v. Capital Federal Savings & Loan Ass'n,* 642 P.2d 21 (Colo.App.1981). As stated in *Restatement (Second) of Torts* § 766B (1979), this interference consists of "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *See Wasalco, Inc. v. El Paso County,* 689 P.2d 730 (Colo.App. 1984).

█ The derogatory and possibly erroneous information supplied by the two Wards sales managers, plus the fact that they were faced with beginning the approval process again after the unannounced transfer of the one sales manager, resulted, according to Mrs. Weiland's testimony, in their not further pursuing the purchase. Under this state of the record, the evidence was sufficient to make it a jury question whether Wards' conduct was intentional and improper and whether it prevented the formation of any contract.

Wards argues that because Andrews had breached his contract with Wards, he had nothing to sell to the Weilands. We disagree with this contention. The record shows that Andrews' contractual relationship with Wards existed until Wards closed the store on August 21, 1979, long after the Weiland negotiations took place.

#### 2. *Measure of Damages*

█ The jury was instructed that, in determining the amount of actual damages it may award for the interference, it "should consider the amount which defendant Andrews would have received had the parties entered into a contract for the sale of Andrews' business." Wards' attorney, at the *in camera* session between court and counsel on jury instructions, did not object to this instruction; instead, he admitted that it "is appropriate." Therefore,

we do not consider Wards' contention that the jury was improperly instructed on the measure of damages for that tort. *See* C.R.C.P. 51; *Montgomery Ward & Co. v. Kerns,* 172 Colo. 59, 470 P.2d 34 (1970).

### F. *Exemplary Damages*

■ Contrary to Wards' contention, the evidence cited earlier in this opinion, viewed in its totality and in the light most favorable to the jury's verdicts, *see Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979); *Bodah v. Montgomery Ward & Co.,* 724 P.2d 102 (Colo.App.1986), justified submission of the question of exemplary damages to the jury and supports an award of such damages in each instance. *See generally Frick v. Abell, supra; Soneff v. Harlan,* 712 P.2d 1084 (Colo.App.1985).

■ The fact that Wards consulted an attorney before acting is one factor to be considered, *see Frick v. Abell, supra,* but is not determinative of the issue whether and to what extent exemplary damages can be awarded. *See Vogel v. Carolina International, Inc.,* 711 P.2d 708 (Colo.App. 1985).

Wards also contends that the jury instructions on exemplary damages were prejudicially repetitive. Under the circumstances of this case, we disagree.

The trial court refused Wards' request that it give only one instruction on exemplary damages. Instead, it gave a separate exemplary damages instruction with the instructions pertaining to each separate counterclaim where such damages had been sought.

■ Unnecessary repetition in charges to the jury is bad practice and is to be avoided, *Pletchas v. Von Poppenheim,* 148 Colo. 127, 365 P.2d 261 (1961); however, it is not, on its face, reversible error unless it reasonably appears that the jury was misled. *See Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985). Viewing the instructions as a whole, and the special verdict forms submitted as to each counterclaim, we cannot conclude that the repetition prejudiced the jury in favor of Andrews.

We also reject, as being without merit, Wards' arguments that the exemplary damages awards were against public policy and that the jury inconsistently awarded exemplary damages for taking unsecured goods and not for taking secured goods.

### G. *Attorney Fees*

Wards argues that the trial court should have considered the issue of Wards' contractual right to recover attorney fees. We do not agree.

Wards included this issue in the prayer of its complaint, but did not present the issue at trial. Instead, it asserted it in its motion to amend the judgment. It now claims, on appeal, that it could not present the issue at trial because it was supplemental to the claim for breach of contract.

■ In the ordinary case, a party is entitled to recover his attorney fees only upon showing that the fees had been paid or incurred and were reasonable. *See Rock Wool Insulating Co. v. Huston,* 141 Colo. 13, 346 P.2d 576 (1959) (plaintiff presented no evidence at trial and wanted trial court to determine attorney fees based upon general evidence). Moreover, under circumstances in which, as here, the agreement merely provides that one party is entitled to recover attorney fees, the existence of such a provision, without more, is not sufficient to support a money judgement. *Waterman v. Sullivan,* 156 Colo. 195, 397 P.2d 739 (1964). Hence, because Wards did not present any evidence at trial about the fees, the trial court correctly refused to determine the issue post-trial.

### III. *Andrews' Cross-Appeal*

Andrews first contends that the jury's award of only one dollar in exemplary damages for interference with a prospective contract is inadequate. Under the circumstances of this case, we do not agree.

■ The jury awarded exemplary damages of $10,000 on the conversion, $1,000 on the trespass, and one dollar on the other two counterclaims, outrageous conduct and interference. Although these counterclaims were for separate injuries, they all arose out of the same general course of

conduct. The purpose of exemplary damages, to punish the wrongdoer, *Frick v. Abell, supra,* was served by the aggregate amount awarded, and the desired deterrent effect was accomplished by the larger awards on the conversion and trespass claims.

Also, § 13–21–102, C.R.S., provides that "the jury ... *may* award ... reasonable exemplary damages." (emphasis supplied) Hence, the determination as to whether to grant such damages is discretionary with the jury; there is no *right* to any exemplary damages. *Louisville & N.R. Co. v. Street,* 164 Ala. 155, 51 So. 306 (1909).

Andrews' other contention is that the jury's award of $15,000 in actual damages as the value of the unsecured goods and personal property at the time of conversion was too low. He claims that the minimum value of the goods converted was at least $20,000. In view of our rulings in section IV below, we do not address this contention separately.

### IV. *Damages Adjustments*

The jury awarded Andrews $68,000 for Wards' interference with Andrews' expectancy of the sale of his business to the Weilands. This was in response to the trial court's instruction that:

> "In determining the amount of any actual damages you may award for the interference with the sale of defendant Andrews' business, you should consider the amount which defendant Andrews would have received had the parties entered into a contract for the sale of Andrews' business."

 Based on other instructions, the jury made three additional awards for the destruction of Andrews' business, measured by its fair market value: $928 in the trespass, one dollar in the conversion, and one dollar in the outrageous conduct verdicts. The inconsistencies in market value or sale price for the business between $68,000, $928, and $1 cannot be reconciled. In any event, Andrews was entitled to recover only once for the value of the business. Thus, if the $68,000 figure is correct, and there was evidence to support it as a *gross* sale price, the lower amounts included in the other verdicts and judgments must be deleted.

 Similarly, there can be only one recovery for the loss incurred because of the termination of the truck rental agreement. If the $100 figure in the trespass verdict is retained, the two $1 verdicts must be deleted from the conversion and outrageous conduct judgments.

The $68,000 figure in the interference verdict can be upheld only as representing a gross amount Andrews would have received from a sale of the business assets, free and clear of all liabilities. These assets would have included the franchise and the personal property in the business prior to Wards' repossession and conversion. It is undisputed that the property taken from Andrews' business premises was inventoried and the valued placed thereon by Wards was credited against Andrews' debt to Wards. Therefore, from the $68,000 figure there should have been deducted the inventory value assigned by Wards to this property, both secured and unsecured, and credited on the amount due to Wards before arriving at the $24,000 determined by the jury to be the balance due from Andrews to Wards reflected in Wards' breach of contract judgment against Andrews. Consequently, Andrews' original $68,000 judgment must be reduced by the amount credited to Andrews' account with Wards. There was no testimony as to any amounts owing by Andrews to other creditors, and, therefore, no other reductions need to be made.

 Inasmuch as the value of the goods and personal property converted by Wards was credited, at the figure assigned therefor by Wards, on the amount due to it from Andrews, and any value in excess of the amount credited by Wards had to have been included in the net amount due in the interference judgment, the $15,000 compensatory damage figure in the conversion judgment represents a double recovery and must be deleted.

 Accordingly, all judgments that have been appealed are affirmed as to liability and exemplary damages. As to com-

pensatory damages: $400 of the trespass judgment is affirmed and the $928 and $100 awards are reversed; the compensatory damage award in the conversion judgment is reversed; the one dollar award for emotional distress in the outrageous conduct judgment is affirmed and the two other one dollar awards are reversed; and the $68,000 award on the interference counterclaim is reversed. The cause is remanded for further proceedings (1) to determine the inventory value assigned by Wards to the property taken from Andrews' business premises and credited to Andrews' account with Wards, (2) to deduct that amount from $68,000, and (3), based thereon, to enter a new compensatory damages judgment on the interference counterclaim in favor of Andrews and against Wards.

SMITH and KELLY, JJ., concur.