23CA1095 Marriage of Rios 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1095
City and County of Denver District Court No. 19DR30421
Honorable Jill D. Dorancy, Judge

In re the Marriage of

Jennifer Kain Rios,

Appellant and Cross-Appellee,

and

Franklin Rios,

Appellee and Cross-Appellant.

ORDER AFFIRMED, APPEAL DISMISSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE HAWTHORNE*
Gomez and Richman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Radeff & Hart, P.C., Chris Radeff, Drew Thomas, Golden, Colorado, for
Appellant and Cross-Appellee

Sherman & Howard L.L.C., Jordan M. Fox, Natalie R. Whitacre, Denver,
Colorado, for Appellee and Cross-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dissolution of marriage proceeding between Jennifer Kain Rios (wife) and Franklin Rios (husband), wife appeals the district court's order terminating husband's maintenance obligation for a period of four months.  Husband cross-appeals, contending that the court erred in awarding wife attorney fees as to a prior appeal.  Both parties request appellate attorney fees incurred in this appeal.

¶ 2     We conclude that wife's attempt to challenge the district court's order terminating husband's maintenance obligation for the four month period is untimely, thus we lack jurisdiction to address her arguments.  We affirm the court's May 10 Order awarding attorney fees to wife.  And we remand the case to the district court to determine the parties' requests for appellate attorney fees in this appeal under section 14-10-119, C.R.S. 2024.

I.     Factual and Procedural History

¶ 3     In December 2019, the district court entered a dissolution decree terminating the marriage between wife and husband.  In February 2020, the court entered permanent orders addressing the parties' incomes, as well as their assets and debts.  The court found that wife had an annual income of $75,000.  Although husband was

1

unemployed at the time the permanent orders were entered, the court imputed to him an annual income of $525,000 based on his prior employment.[1]  Based on these findings, the court ordered husband to pay wife $8,000 per month maintenance beginning March 2020 and ending March 2033.

¶ 4      In April 2020, husband filed a motion asking the district court to modify maintenance or alternatively to "place [it] in abeyance." The court summarily denied the motion.  Husband appealed, and a division of this court reversed the district court's order and remanded the case to the district court for a hearing on husband's motion and to consider wife's request for appellate attorney fees.  *In re Marriage of Rios*, slip op. at ¶ 1 (Colo. App. No. 20CA1198, July 22, 2021) (not published pursuant to C.A.R.(e)).

¶ 5      The district court held a hearing on husband's motion and wife's request for attorney fees.  In an order entered on March 22, 2022 (the March 22 Order), the court ordered that husband's

---

[1] While husband disputes the manner in which the court determined his income, another division of this court previously considered — and rejected — his arguments on this issue.  *In re Marriage of Rios*, slip op. at ¶¶ 6-10 (Colo. App. No. 20CA1198, July 22, 2021) (not published pursuant to C.A.R.(e)).

2

maintenance be retroactively held in abeyance from May to August 2020, a period of four months. It also ordered wife to file an affidavit of attorney fees within fourteen days of the order.

¶ 6 Wife filed her affidavits of attorney fees several days after the court's fourteen-day deadline. But, over husband's objection, the court accepted wife's attorney fees affidavits. On August 10, 2022, the court held a hearing on wife's request, and it ordered husband to pay all of wife's appellate attorney fees.

¶ 7 Both parties filed motions seeking post-trial relief. Husband's motion asked the court to reconsider its decision awarding attorney fees to wife, and wife's motion asked the court to clarify its March 22 Order holding husband's maintenance payments in abeyance for the period of May to August 2020. In an order entered on May 10, 2023 (the May 10 Order), the court corrected an error in the appellate attorney fees award to wife, but otherwise declined to modify its ruling in the March 22 Order. Afterwards, wife appealed and husband cross-appealed.

## II. Appealability of the May 10 Order

¶ 8    As a threshold matter, the parties dispute which district court order is the subject of this appeal, and whether that order is properly before this court.

¶ 9    Wife argues that she is appealing *only* the May 10 Order. She contends that the court erred in the May 10 Order by terminating husband's maintenance obligation for the four-month period between May and August 2020. Husband argues that wife's appeal is actually attempting to challenge the court's termination of his maintenance obligation that was part of the March 22 Order. Thus, husband asserts that wife's appeal of the March 22 Order is untimely.

¶ 10    In response, wife argues that the March 22 Order was not an appealable final order until the district court issued its May 10 Order. Specifically, she argues that the court merely held husband's maintenance in "abeyance" for the four-month period; so she could not appeal the order suspending husband's maintenance obligation until the court issued a "final order" terminating the obligation in its May 10 Order.

¶ 11    Because we conclude that wife's appeal directly challenges the March 22 Order — an order that she did not timely appeal — we reject her argument. Thus, her attempt to appeal the March 22 Order is untimely and we decline to address her argument's merits because we lack jurisdiction to do so.[2]

### A.    Additional Facts

¶ 12    In its March 22 Order, the district court ruled on husband's motion to modify his maintenance obligation. As relevant here, it stated:

> [T]he Court does find it appropriate to hold the maintenance in abeyance for the time period between May 2020 and August 2020 while [husband] was not employed and collecting unemployment. The Court further finds that holding the maintenance award in abeyance is a reasonable and practical use of the court's discretion and is warranted for that time period.
>
> The Court finds that [husband] has demonstrated circumstances that warrant a retroactive abeyance of his spousal maintenance obligation. The Court therefore holds [husband's] spousal maintenance

---

[2] Husband argues that if we conclude that we have appellate jurisdiction regarding the March 22 Order, we should also address the district court's initial calculation and award of maintenance. Because we conclude that wife's appeal of the March 22 Order is not properly before us, we need not reach this issue.

> obligation in abeyance for the months of May 2020 through August 2020.

¶ 13    Following this ruling, wife did not file a motion for clarification or an appeal regarding the court's March 22 Order.

¶ 14    Later, during the August 10, 2022, hearing on wife's request for appellate attorney fees, the parties disagreed as to the March 22 Order's effect on husband's obligation to pay maintenance. Wife argued that "abeyance doesn't mean that [the maintenance] was vacated, or that he no longer had to pay it." The court responded that "during the time period, I'm finding that he did not have the ability to pay the 8,000. . . . I held it in abeyance, basically meaning he doesn't have to pay it for that time period even though his economic circumstances were not substantial and continuing." The court also said that if wife was confused or if she disagreed with the March 22 Order, she could have filed a motion or appeal. But the court noted that wife "didn't ask for clarification, you didn't ask for any, anything on it. You just came to me today, on the day of the hearing, to tell me that that's how you believe that [the March 22 Order] should be read."

¶ 15     In early January 2023, the district court issued its order granting prior appellate attorney fees to wife in the amount of $30,323.  Wife filed a motion for post-trial relief asking the court to reconsider or hold a hearing concerning its March 22 Order.  Husband also filed a motion for post-trial relief asking the court to reconsider its award of appellate attorney fees to wife.

¶ 16     In the May 10 Order, the court rejected wife's post-trial motion, reiterating that "[a]beyance is simply a temporary suspension of the payment activity during which time the payments cannot continue."  It also restated its intent in issuing the order, stating that the March 22 Order "was meant to be a temporary relief wherein [husband] did not have to pay for those months but those payments would resume.  The abeyance means that the payments are completely erased for that time period."  As to husband's post-trial motion, the court reduced the attorney fees awarded to $29,488, but otherwise affirmed its prior order.

## B.     Analysis

¶ 17     "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review."  *In re Marriage of Buck*, 60 P.3d 788, 789 (Colo. App. 2002).  A notice of appeal must be filed "within

49 days after entry of the judgment, decree, or order being appealed." C.A.R. 4(a)(1). If a timely post-trial motion is filed, the time for filing the notice of appeal generally runs from the date the district court decides the motion. *Buck*, 60 P.3d at 789.

¶ 18 The general rule requires an entire case to be decided before any ruling in that the case may be appealed. *Cyr v. Dist. Ct.*, 685 P.2d 769, 770 (Colo. 1984). "Our jurisdiction is limited to review of final, appealable judgments or orders." *People in Interest of S.C.*, 2020 COA 95, ¶ 6. A judgment is final and therefore appealable when it disposes of the entire litigation on the merits, leaving nothing for the court to do except execute the judgment. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 10. In an order that ends the litigation on the merits but leaves the issue of unresolved attorney fees to be decided, the issue "does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." *Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1073 (Colo. 1988) (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988)).

¶ 19 Although the district court recognized that both parties' post-trial motions were timely, neither post-trial motion affects our

analysis of wife's argument on appeal. As relevant here, both post-trial motions were filed in response to the district court's order issued in January 2023 that addressed wife's request for appellate attorney fees. Because the post-trial motions were not filed in response to the March 22 Order, neither motion tolled the time period for filing an appeal of that order.

¶ 20 Wife argues that, because the district court used the term "abeyance" in the March 22 Order, it was not an appealable final order until the court formally terminated husband's maintenance obligation in the May 10 Order. For several reasons, we are not persuaded.

¶ 21 First, despite the court's choice of words in the March 22 Order, the context in which the term "abeyance" was used revealed the court's intent. *See Blecker v. Kofoed,* 672 P.2d 526, 528 (Colo. 1983) ("When an order is ambiguous, the task of the reviewing court is to determine what the trial judge intended in issuing the order. To resolve an ambiguity, it is appropriate to refer to the entire record and to the circumstances surrounding the order.") (citation omitted). We are not persuaded that the court's using the term "abeyance" was so unclear as to prevent wife from being

placed on notice that the court's order fully resolved husband's maintenance issue.

¶ 22     Read in the context of the record as a whole, the court's intent in holding husband's maintenance payments in "abeyance" was to eliminate the payments for a limited period of time.  Husband's initial motion seeking to modify maintenance or alternatively, place it in abeyance, expressly asked that his "maintenance obligation . . . be terminated or at least placed in abeyance until such time as he c[ould] obtain replacement employment."  He explained that this modification was necessary because — at the time — he had not yet obtained employment, and his severance payments were ending.  And he asserted that he would no longer have an income to either pay maintenance or meet his own needs.

¶ 23     Husband also cited *In re Marriage of Fernstrum*, 820 P.2d 1149 (Colo. App. 1991), to support his request.  In *Fernstrum*, the court held that the wife was eligible for maintenance; however, the court directed the husband to pay $1.00 per year towards maintenance "until such time as there is a positive change in his economic financial situation so as to permit an increase in payment."  *Id.* at 1152.  The court also noted that the $1.00 per year award was

intended to "reflect[] husband's present poor economic situation, but it has the effect of permitting an adjustment upward if future circumstances require." *Id.*; *see also In re Marriage of Ward*, 740 P.2d 18, 20 (Colo. 1987) (holding that maintenance could be temporarily reduced to accommodate the husband's present economic difficulties).

¶ 24 Read in context, husband's motion and the cases cited in it reflect a request that husband be relieved of his maintenance obligation until his financial circumstances improved. Indeed, the *Fernstrum* court permitted a reduced maintenance payment until there were positive changes in the payee's financial situation. 820 P.2d at 1152. So, at a minimum, husband's motion placed wife on notice that he sought temporary elimination of his maintenance obligations until he obtained employment.

¶ 25 Similarly, the court's intent in using the term "abeyance" is discernable from the March 22 Order's text. In the March 22 Order, the court explained how husband's inability to find employment, the end of his severance payments, and the adverse impact of the COVID-19 pandemic on the economy were sufficient circumstances to warrant a pause in spousal maintenance. The court, however,

11

limited the scope of its order by pausing the maintenance payments for only the months of May to August 2020. This suggests that the court recognized that husband's inability to meet his own financial needs necessarily required the court to grant husband a temporary reprieve from his maintenance obligation. Also, nothing in the court's order provided or suggested that husband would be responsible for paying the maintenance amounts held in abeyance at a future date. Thus, the March 22 Order's text itself placed wife on notice that the order's purpose was to temporarily eliminate husband's maintenance for a limited period of time.

¶ 26 Indeed, the court's statements in later proceedings indicated that it intended to eliminate husband's maintenance obligation for a period of time by entering the March 22 Order. At the August 10 hearing regarding wife's request for appellate attorney fees, the court said that the March 22 Order meant "that h[usband] did not have the ability to pay the 8,000. . . . I held it in abeyance, basically meaning that he doesn't have to pay it for that time period." And in the May 10 Order, the court restated that the March 22 Order's purpose was to provide husband with temporary relief from maintenance payments from May to August 2020, but

that those payments would resume after that period. The court also reiterated that the term "abeyance means that the payments are completely erased for that time period." Although the court's statements occurred after the March 22 Order was issued, they explain the court's intent in issuing the order.

¶ 27     Second, even if the court's use of the term "abeyance" was unclear, wife had multiple opportunities to seek redress. But she did not ask the court to clarify its language in the March 22 Order (until much later), nor did she file a motion seeking clarification or attempt to appeal the order. *See People v. Shifrin*, 2014 COA 14, ¶¶ 49-50 (finding no abuse of discretion where the defendant did not seek clarification of the court's order); *Mailloux v. Bradley*, 643 P.2d 797, 799 (Colo. App. 1982) ("The defendant did not object to or seek clarification of the instruction as given, although he had the opportunity to do so. Accordingly, since defendant failed to request a clarifying instruction . . . , he is now in no position to complain. We leave the defendant in the posture which he accepted and placed himself.") (citations omitted). Notably, wife did not seek clarification of the March 22 Order after it was issued, nor did she object or raise any concerns with the court indicating her confusion

13

about it.  *See People v. Cooley*, 2020 COA 101, ¶ 20 (noting that
"[t]he purpose of the contemporaneous objection rule is to conserve
judicial resources by alerting the district court to a particular issue
in order to give the court an opportunity to correct any error that
could otherwise jeopardize a defendant's right to a fair trial").  And,
as noted by the court, wife did not raise any concerns about the use
of "abeyance" in the court's order until the August 10 hearing,
several months after the order was originally issued.  The court also
noted that wife did not file any motions or appeals relating to the
order.  So, even assuming that wife was confused about the intent
of the court's March 22 Order, she did not take any action to place
the court on notice of any alleged error.

¶ 28    We therefore conclude that the March 22 Order constituted a
final appealable order.  The order resolved the questions regarding
husband's maintenance obligations and the only issue that
remained contested was wife's request for attorney fees.  *See
Nelson*, ¶ 18 (holding that "an order fully resolving a motion to
modify maintenance is a final appealable order, notwithstanding an
unresolved request for attorney fees").  Thus, if wife wished to
challenge the court's March 22 Order, she was required to file a

14

timely appeal by May 10, 2022. *See* C.A.R. 4(a)(1) ("[T]he notice of appeal required by C.A.R. 3 *must* be filed with the appellate court with an advisory copy served on the lower court within 49 days after entry of the judgment, decree, or order being appealed.") (emphasis added). Because wife did not timely appeal the March 22 Order, we lack jurisdiction to address her arguments.

¶ 29 Wife also contends that the district court's March 22 Order was not final for purposes of determining husband's maintenance obligation because the court did not conduct an accounting and enter an order as to how much maintenance was over- or underpaid to wife. However, this argument is unpersuasive because a disagreement about whether a party has actually paid maintenance does not affect the finality of the court's order. Despite the parties' disagreement as to the exact amount of maintenance paid, the district court's order detailed the precise amount and duration of the maintenance. Thus, the court's order was final.

### III. Wife's Request for Attorney Fees

¶ 30 On cross-appeal, husband argues that the district court erred in granting wife's request for appellate attorney fees she incurred in the parties' earlier appeal. We disagree.

## A. Additional Facts

¶ 31 In its March 22 Order, the court ordered wife's counsel to file her affidavits of attorney fees within fourteen days. The court also ordered that husband would have fourteen days after the affidavits were submitted to object and request a hearing. Wife, however, did not submit her affidavits regarding attorney fees until April 11, 2022, six days after the court's fourteen-day deadline had passed. Husband objected, arguing that the court should deny wife's request for attorney fees because she had not requested an extension of time to file her affidavits and that she had missed the court's deadline. The court permitted wife to file her affidavits and set the matter for a hearing.

¶ 32 On August 10, 2022, the court heard testimony and argument regarding wife's attorney fees request. In January 2023, the court ordered husband to pay all of wife's appellate attorney fees. The court found that the rates charged were reasonable given the attorneys' specialized experience, the necessity of that specialized experience in the case, and the prevailing market rates for similar attorneys in the Denver area. Based on this information, the court

16

calculated the lodestar amount for wife's appellate attorney fees to be $30,323.

¶ 33    The court also considered the factors listed in C.A.R. 1.5 to determine if an upward or downward adjustment to the lodestar amount was necessary.  Based on its review, it concluded that no adjustment was necessary.

## B.    Analysis

¶ 34    To ensure that a party does not suffer undue economic hardship from the proceedings in a dissolution of marriage case, a court may order a party to pay a reasonable amount for the other party's attorney fees and costs based on the parties' relative economic circumstances.  § 14-10-119; *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006).  To achieve this equitable purpose, the trial court must consider the relative financial status of each party.  *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997).  When assessing the reasonableness of the attorney fees a party seeks to recover, the court must generally calculate a lodestar amount, which represents the number of hours reasonably expended on the case multiplied by a reasonable hourly rate.  *In re Marriage of Aragon*, 2019 COA 76, ¶¶ 9, 15.  The lodestar amount is

17

a starting point, and it carries with it a presumption of reasonableness. *Id.* at ¶¶ 15, 17. However, the court may adjust the lodestar amount based on various factors. *Id.* at ¶ 15; *see also* C.R.C.P. 1.5(a).

¶ 35    We review a trial court's decision to award attorney fees and costs for an abuse of discretion. *In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 33. A trial court abuses its discretion when the court's decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of law. *In re Marriage of Young*, 2021 COA 96, ¶ 7. We may not disturb the amount of fees awarded unless it is patently erroneous and unsupported by the evidence. *See Yaekle v. Andrews*, 169 P.3d 196, 201 (Colo. App. 2007), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008).

¶ 36    Husband contends that the district court lacked jurisdiction over wife's request for attorney fees because she failed to submit her affidavits within the court's stated deadline. He also argues that the court erred under C.R.C.P. 6(b) by enlarging wife's time to file her affidavits without finding excusable neglect. We are not persuaded.

¶ 37    As relevant here, Rule 6(b) provides:

> When . . . by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

C.R.C.P. 6(b).

¶ 38    Husband argues that under Rule 6(b), "time may only be extended after the expiration of the specified period 'where the failure to act was the result of excusable neglect.'"  So, according to husband, because wife did not raise and the court did not find excusable neglect as justifying wife's late filing of her affidavits, the court was without discretionary authority to consider her request for attorney fees.

¶ 39    This argument is misplaced because C.R.C.P. 121, section 1-22 specifically addresses "requests for attorney fees made at the conclusion of the action."  C.R.C.P. 121, § 1-22(2)(a).

¶ 40    C.R.C.P. 121, section 1-22(2)(b) provides that "[a] party seeking attorney fees under this practice standard shall file and serve a motion for attorney fees within 21 days of entry of judgment *or such greater time as the court may allow.*"  (Emphasis added.)[3] And another division of this court has considered and rejected the argument that a trial court lacked authority to consider a late-filed request for attorney fees.  *See In re Marriage of Wright,* 841 P.2d 358, 361 (Colo. App. 1992) (holding that, even though the wife filed her affidavit after the deadline established by C.R.C.P. 121, section 1-22, the rule permitted requests to be filed "within such greater time as the court may allow").  Also, contrary to husband's assertion, a party's failure to request an extension of time does not preclude a court from considering a request for an award of costs and fees which has been filed beyond the stated deadline.  *See Parry v. Kuhlmann,* 169 P.3d 188, 190 (Colo. App. 2007) (noting

---

[3] While the district court set a fourteen day deadline for wife to file her affidavits, C.R.C.P. 121, section 1-22(2)(b) permits a party to file their motion "within 21 days of judgment."  Here the relevant order was issued on March 22, 2022, and wife filed her affidavits on April 11, 2022 — twenty days after the order was issued.  Thus, while not compliant with the text of the court's order, she filed her affidavits within the twenty-one day deadline set by Rule 121.

20

that C.R.C.P. 121, section 1-22 "does not require a court to determine that a filing made outside the [filing] period was attributable to excusable neglect or to make any other findings such as those required by C.R.C.P. 6(b)"); *see also Koontz v. Rosener*, 787 P.2d 192, 199 (Colo. App. 1989).

¶ 41　　Husband's reliance on *Moyer v. Empire Lodge Homeowners' Ass'n*, 78 P.3d 313 (Colo. 2003), is also misplaced. That case recognizes that a court does not necessarily abuse its discretion when it denies an untimely bill of costs after the expiration of a court-imposed deadline when the filing party did not request an extension or demonstrate excusable neglect under C.R.C.P. 6(b). *Moyer*, 78 P.3d at 315-16. Notably, *Moyer* does not require a court to apply C.R.C.P. 6 when determining whether to accept requests for attorney fees filed outside of the period imposed under C.R.C.P. 121, section 1-22.

¶ 42　　We are also not persuaded by husband's argument that the district court abused its discretion in awarding appellate attorney fees to wife.

¶ 43　　As noted previously, the court considered wife's affidavits and the witnesses' testimony during the August 10 hearing on attorney

fees. And it found that the attorney fees incurred by wife were both necessary and reasonable, and that the fees were appropriate given the litigation's scope and complexity. In declining to depart from the lodestar amount, the court considered and made specific findings regarding each C.R.C.P. 1.5 factor. So we cannot conclude that the district court abused its discretion in awarding wife's attorney fees request because its decision was not manifestly arbitrary, unreasonable, or unfair, or based on misapplication of the law.

¶ 44 As to husband's other assertions of error, we are not persuaded. Husband argues that the court erred by refusing to adjust the lodestar amount when wife's counsel admitted to making errors in calculating her fee. But, in a later order, the court corrected any error caused by the miscalculation.

¶ 45 Husband also argues that the court failed to make proper lodestar analysis findings because the "affidavits provided were heavily redacted, which prevented the Court and counsel from being able to property [sic] determine if the fees were in fact reasonable." But husband had the opportunity to cross-examine wife and her attorneys regarding the redactions. And the court did not question

the affidavits' adequacy or indicate that it was unable to analyze the information in them. Also, the court commented, "I wouldn't consider [the affidavits] heavily redacted."

¶ 46 Finally, husband contends that attorney fees incurred by wife were "unreasonable because the appeal was entirely unnecessary," appearing to argue that, because he prevailed on his prior appeal, it would be inequitable to require him to pay his and wife's attorney fees. But section 14-10-119 contains no provisions limiting an award of attorney fees to prevailing parties. *See id.* The purpose of section 14-10-119 attorney fees awards is to equalize the parties and ensure that neither party suffers undue economic hardship as a result of the dissolution proceedings. *See Aldrich*, 945 P.2d at 1377. And the court expressly recognized the parties' income disparity as the basis for awarding wife her appellate attorney fees.

¶ 47 Again, we conclude that the district court's decisions were not manifestly arbitrary, unreasonable, or unfair, or based on misapplication of the law, and thus, it did not abuse its discretion in awarding wife her appellate attorney fees.

## IV. Appellate Attorney Fees Requests

¶ 48 Wife asks us to award her attorney fees incurred in this appeal under section 14-10-119. Husband also asks us to award his attorney fees incurred in this appeal under section 13-17-102, C.R.S. 2024, arguing that wife used the court system to harass him by refusing to engage in good faith negotiations and by filing "vexatious" claims.[4]

¶ 49 We reject husband's request to award attorney fees to him based on section 13-17-102. Though we have concluded that we lack jurisdiction over wife's appeal, her claims are neither frivolous nor vexatious. *See Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984) (defining a frivolous claim as one that presents no rational argument based on the evidence or law); *Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App. 1994) (defining a vexatious claim as one brought or maintained in bad faith). Wife's

---

[4] Wife contends that we should deny husband's request for attorney fees because he failed to adequately state the legal and factual basis for his opposition as required by C.A.R. 39.1. We reject this contention. While true that husband's opening-answer brief could have more clearly contested the basis for wife's request for attorney fees, husband's competing request for attorney fees is itself a direct response to wife's request.

appeal raises reasonable arguments about the use of the term "abeyance" in the district court's order, and we are unpersuaded by husband's arguments that she engaged in this appeal in bad faith.

¶ 50 Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we remand their remaining requests to the district court. *See* C.A.R. 39.1; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

## V. Conclusion

¶ 51 We affirm the district court's May 10, 2023, Order Regarding Cross-Motions for Post-Trial Relief Pursuant to C.R.C.P. 59, we dismiss husband's request for attorney fees based on section 13-17-102, and we remand the case to the district court to determine the parties' respective requests for appellate attorney fees in this appeal under section 14-10-119.

JUDGE GOMEZ and JUDGE RICHMAN concur.